Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| DERIC LÓPEZ RODRÍGUEZ<br><br>Recurrente<br><br>v.<br><br>BELLA RETAIL GROUP, INC. H/N/C FLAGSHIP BAYAMÓN; FCA US LLC; POPULAR AUTO, LLC; ASSURANCE SERVICES PR INC.<br><br>Recurridos | KLRA202300580 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor (DACO), Oficina Regional de Arecibo<br><br>Querella número: ARE-2022-0004299<br><br>Sobre: Automóvil |

Panel integrado por su presidente, el juez Bermúdez Torres, la juez Aldebol Mora y el juez Monge Gómez.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparece la parte recurrente, Deric López Rodríguez, y nos solicita la revocación de una *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACO), el 25 de agosto de 2023, notificada el 8 de septiembre del mismo año. Mediante el referido dictamen, la agencia impuso $5,000.00 a la parte recurrida, Bella Retail Group, Inc. h/n/c Flagship Bayamón y FCA US, LLC, por concepto de compensación económica a favor de la parte recurrente, conforme a lo adjudicado en la querella incoada por este último.

Por los fundamentos que expondremos a continuación, se confirma la determinación administrativa recurrida. Veamos.

### I

El 10 de noviembre de 2022, Deric López Rodríguez (López Rodríguez o recurrente) incoó una *Querella* en contra de Bella Retail Group, Inc. (Bella Retail) H/N/C Flagship de Bayamón (Flagship);

Número Identificador

SEN2024 _____

FCA US, LLC (FCA) (recurridos); y Popular Auto, LLC ante el DACO.[1]

En el aludido escrito, López Rodríguez alegó que su vehículo *suv,* marca Jeep Gran Wagoneer 2022, que adquirió el 13 de agosto de 2022, comenzó a botar humo y dejó de funcionar, por lo que tuvo que ser transportado a Flagship el 16 de octubre del mismo año. Arguyó que, a pesar de haber sido informado por el departamento de mantenimiento que la unidad tenía problemas con el motor, no tenía información de cuándo el vehículo *suv* estaría disponible. Debido a lo anterior, López Rodríguez solicitó un vehículo nuevo o la cancelación del contrato.

En respuesta, Popular Auto, LLC presentó su *Contestación a querella* el 30 de noviembre de 2022.[2] En resumen, negó los hechos presentados por López Rodríguez y realizó sus defensas afirmativas, entre estas, arguyó que no era responsable de lo alegado en su contra.

Por su parte, el 1 de diciembre de 2022, FCA presentó una *Contestación a la querella.*[3] En esencia, negó los hechos planteados por López Rodríguez por falta de información o conocimiento y levantó algunas defensas afirmativas.

---

[1] Anejo II del recurso, págs. 9-29. Junto a la acción, la parte recurrente presentó los siguientes documentos: (1) Notificación de querella, con fecha del 10 de noviembre de 2022; (2) Registración Provisional del vehículo; (3) Documento de Venta Leasing Co. de Flagship Chrysler de Bayamón, con fecha del 13 de agosto de 2022; (4) Accesorios Pendientes, con fecha del 13 de agosto de 2022; (5) Acuerdo Suplementario y/o Contingente; con fecha del 13 de agosto de 2022; (6) Clientes de entidades financieras notificación de riesgo y relevo de responsabilidad por tiempo transcurrido para registración y/o traspaso de vehículo ante departamento de transportación y obras públicas, con fecha del 13 agosto de 2022; (7) Conduce de entrega, con fecha del 13 de agosto de 2022; (8) Reglamento de garantía de vehículo de motor, con fecha del 13 de agosto de 2022; (9) Acuerdo de evidencias requeridas, con fecha del 13 de agosto de 2022; (10) *Ackowledgment,* con la fecha de 13 de agosto de 2022; (11) *Assurant services of Puerto Rico, Inc, Declaration page,* con la fecha del 13 de agosto de 2022; (12) Apéndice de plan de protección garantizada (GAP), con fecha del 13 de agosto de 2022; (13) Endoso 3010-Automóvil arrendado, con fecha del 13 de agosto de 2022; (14) Certificado de cumplimiento con el seguro de responsabilidad obligatorio, con fecha del 19 de agosto de 2022; (15) *Certification of liability insurance,* con fecha del 15 de agosto de 2022. Véase, Anejo II del recurso, págs.14-29.
[2] Anejo IV del recurso, págs. 31-35.
[3] Véase, *Contestación a la querella* de FCA US, LLC en el *Expediente Administrativo.*

Luego de algunos incidentes procesales, el 17 de febrero de 2023, López Rodríguez presentó una *Querella enmendada*.[4] En el referido escrito, incluyó a Assurant Services of Puerto Rico, Inc. como parte querellada pues alegó que adquirió dicho seguro como uno extendido adicional al brindado por Bella Retail. De igual forma, arguyó que la unidad llevaba ciento veintitrés (123) días en el concesionario, por lo que solicitó al DACO que cancelara el contrato o le entregaran un vehículo nuevo.

En respuesta, el 21 de febrero de 2023, FCA presentó su *Contestación a la enmienda a la querella*.[5] En esencia, negó los hechos planteados por López Rodríguez y presentó varias defensas afirmativas.

De igual forma, Bella Retail presentó su *Contestación a la querella* el 8 de marzo de 2023.[6] En síntesis, negó los hechos expuestos por López Rodríguez por falta de información. Expuso sus defensas afirmativas y, entre ellas, alegó que contestó la acción sin antes haber realizado un examen físico de la guagua en controversia.

Luego de haberse realizado dos inspecciones del vehículo de motor,[7] López Rodríguez presentó una *Moción en solicitud de sentencia sumaria* el 18 de abril de 2023.[8] En esencia, López

---

[4] Anejo VII del recurso, págs. 42-44.
[5] Anejo VIII del recurso, págs. 45-50.
[6] Anejo IX del recurso, págs. 51-55.
[7] Véase, *Informe de inspección vehículos de motor* realizadas el 28 de febrero de 2023 y el 13 de abril de 2023 en el *Expediente Administrativo*.
[8] Anejo XI del recurso, págs. 58-67. Junto a esta moción, la parte recurrente presentó: (1) Registración Provisional del vehículo; (2) Documento de Venta Leasing Co. de Flagship Chrysler de Bayamón, con fecha del 13 de agosto de 2022; (3) Accesorios Pendientes, con fecha del 13 de agosto de 2022; (4) Acuerdo Suplementario y/o Contingente; con fecha del 13 de agosto de 2022; (5) Clientes de entidades financieras notificación de riesgo y relevo de responsabilidad por tiempo transcurrido para registración y/o traspaso de vehículo ante departamento de transportación y obras públicas, con fecha del 13 agosto de 2022; (6) Conduce de entrega, con fecha del 13 de agosto de 2022; (7) Reglamento de garantía de vehículo de motor, con fecha del 13 de agosto de 2022; (8) Acuerdo de evidencias requeridas, con fecha del 13 de agosto de 2022; (9) *Acknowledgment*, con la fecha de 13 de agosto de 2022; (10) *Assurant services of Puerto Rico, Inc, Declaration page*, con la fecha del 13 de agosto de 2022; (11) Apéndice de plan de protección garantizada (GAP), con fecha del 13 de agosto de 2022; (12) Endoso 3010-Automóvil arrendado, con fecha del 13 de agosto de 2022; (13) Certificado de cumplimiento con el seguro de responsabilidad  obligatorio, con fecha del 19

Rodríguez alegó que, luego de la inspección del 13 de abril de 2023, se pudo constatar que el vehículo había sido reparado, pero que el tiempo de espera excedió el periodo razonable para reparar una unidad, por lo que procedía la disolución del contrato de *leasing*. Argumentó que debido a que Flagship tardó ciento cuarenta y cuatro (144) días en reparar el vehículo *suv*, procedía en derecho cancelar o resolver el contrato habido entre las partes.

En respuesta a lo anterior, FCA presentó una *Oposición a moción de sentencia sumaria* el 18 de mayo de 2023.[9] En síntesis, FCA arguyó que no procedía la resolución del contrato pues Flagship reparó la unidad de López Rodríguez en la única oportunidad que tuvieron para hacerlo y sin costo alguno. Incluso, alegó que le proveyó transportación alterna durante el periodo en que la unidad se encontraba en reparación. Por su parte, Bella Retail presentó una *Moción uniéndonos a oposición a moción de sentencia sumaria* el 7 de junio de 2023.[10]

Celebrada la vista administrativa y evaluadas las posturas de las partes, el 25 de agosto de 2023, notificada el 8 de septiembre del mismo año, el DACO emitió la *Resolución* que nos ocupa.[11] En particular, el organismo administrativo desglosó las siguientes determinaciones de hechos:

1.  El día 13 de agosto del 2022, POPULAR AUTO[,] LLC. adquirió mediante contrato de compraventa en el negocio FLAGSHIP CHRYSLER BAYAM[Ó]N un vehículo de motor marca JEEP – GRAND WAGONEER – 2022. El día 17 de agosto del 2022, POPULAR AUTO[,] LLC. cedió en arrendamiento al querellante DERIC A[.] L[Ó]PEZ RODR[Í]GUEZ el vehículo antes descrito.

2.  El día 10 de noviembre del 2022, el querellante radic[ó] una querella administrativa en esta agencia y aleg[ó,] en síntesis[,] que mientras transitaba en el vehículo[,] el 13 de octubre del 2022[,] el JEEP GRAND WAGONEER comenzó a botar humo y dej[ó]

---

de agosto de 2022; (14) *Certification of liability insurance*, con fecha del 15 de agosto de 2022. Véase, Anejo XI del recurso, págs.68-83.
[9] Anejo XII del recurso, págs. 84-92.
[10] Anejo XII del recurso, págs. 93-94.
[11] Anejo I del recurso, págs. 1-5.

de funcionar. Que hizo gestiones de transportación para el vehículo y lo desposit[ó] en el negocio FLAGSHIP [CHRYSLER] BAYAM[Ó]N para reparación conforme a los términos de garantía. Que hacía llamadas telefónicas al negocio y no recibía una contestación satisfactoria en relación a la condición mecánica del vehículo. En enero del 2023 le informaron al querellante que iban a sustituir el motor del vehículo conforme a los términos de garantía del fabricante porque ten[í]a una fisura. Que el nuevo motor iba a llegar a PUERTO RICO mediante carga marítima.

3. Entre los meses de mayo o junio del 2023, el vehículo antes descrito fue entregado a un mandatario del querellante[,] luego de varias inspecciones y pruebas técnicas de peritos que acreditaron una reparación satisfactoria. Desde el 17 de agosto del 2022, hasta la fecha de [la] vista administrativa [el] [22 de agosto de 2023][,] el querellante ha estado pagando los plazos del contrato de arrendamiento.[12]

El DACO concluyó que debido a que el motor del vehículo *suv* fue reparado mediante la sustitución de este por uno nuevo y estuvo cubierto por los términos de la garantía, no se cumplieron los elementos legales para conceder la cancelación del contrato. Por otro lado, el DACO dictaminó que el trámite realizado para reparar el vehículo *suv* fue uno moroso y no hubo la diligencia apremiante esperada para arreglar la unidad, por lo que le impuso a Bella Retail H/N/C Flagship y a FCA el pago de $5,000.00 en concepto de compensación económica a favor de López Rodríguez.

En desacuerdo, el 25 de septiembre de 2023, López Rodríguez presentó una solicitud de reconsideración, la cual no fue atendida por la agencia recurrida en el término aplicable para ello.[13]

Inconforme, el 9 de noviembre de 2023, la parte recurrente compareció ante nos mediante el presente recurso de revisión judicial y esbozó los siguientes señalamientos de error:

Erró el DACO al concluir que el remedio correspondiente para el recurrente era una compensación de $5,000 y no la resolución del contrato de arrendamiento.

---

[12] Anejo I del recurso, pág. 2.
[13] Anejo XV del recurso, págs. 97-106.

Erró el DACO en su dictamen al no considerar la totalidad de la prueba desfilada en la vista administrativa.

Erró el DACO al no decretar la resolución del contrato de arrendamiento e imponer honorarios por temeridad.

En cumplimiento con nuestra *Resolución* del 8 de febrero de 2024, y concedida una prórroga a esos efectos, la parte recurrente presentó un alegato suplementario el 12 de abril del mismo año. Por su parte, el 13 de mayo de 2024, FCA compareció mediante *Alegato en Oposición a "Recurso de Revisión"*. El mismo día, Bella Retail también presentó su alegato en oposición.

Con el beneficio de la comparecencia de las partes, así como la copia certificada del expediente administrativo y la transcripción estipulada de la prueba oral, procedemos a resolver.

## II

## A

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70, resuelto el 24 de junio de 2024; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Transporte Sonnell, LLC v. Junta de Subastas de la Autoridad de Carreteras y Transportación de Puerto Rico y otro*, 2024 TSPR 82, resuelto el 24 de julio de 2024;

*Otero Rivera v. Bella Retail Group, Inc. y otros*, supra; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta. Es por ello que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 2024 TSPR 29, 213 DPR ___ (2023).

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Íd.* Véase, además, *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, supra, y *Super Asphalt v. AFI y otro*, supra, pág. 819.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*

Bajo este supuesto, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), estableció "el marco de revisión judicial de las determinaciones de las agencias administrativas".

*Otero Rivera v. Bella Retail Group, Inc. y otros*, supra; *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.,* págs. 35-36; *OEG v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217. Nuestro Máximo Foro ha expresado que esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.; OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otro,* supra.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía,* supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Íd.*

El Tribunal Supremo de Puerto Rico ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR,* supra, págs. 627-628; *OEG v. Martínez Giraud,* supra.

Finalmente, nuestra más Alta Curia ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud*, supra, pág. 11.

**B**

El Departamento de Asuntos del Consumidor (DACO) constituye el organismo administrativo cuyo principal propósito es defender, vindicar e implantar los derechos de las personas consumidoras en nuestra jurisdicción, mediante la aplicación de las leyes que asistan sus reclamos. Art. 3 de la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, según enmendada, 3 LPRA sec. 341b; *Polanco v. Cacique Motors,* 165 DPR 156 (2005). A tenor con ello, la agencia está plenamente facultada para resolver las quejas y querellas promovidas por las personas ciudadanas en ocasión a que se transgredan las disposiciones legales que proveen para la protección de sus prerrogativas; ello, en cuanto a servicios adquiridos o recibidos del sector privado de la economía. A su vez, el DACO está facultado para conceder los remedios pertinentes mediante la debida adjudicación administrativa. 3 LPRA secs. 341h, 341i-1.

En virtud de lo anterior, mediante la aprobación del Reglamento de Procedimientos Adjudicativos del DACO, Reglamento Núm. 8034 de 14 de junio de 2011 (Reglamento Núm. 8034), el organismo adoptó un esquema uniforme de reglas para la dilucidación de las controversias sometidas a su consideración. De

este modo, la agencia ve regido el ejercicio de sus poderes respecto al proceso adjudicativo de que trate, por la aplicación de normas afines a la solución justa, rápida y económica de las querellas. Regla 1 del Reglamento Núm. 8034, *supra*. Las reglas contenidas en el referido precepto aplicarán a las investigaciones y los procedimientos administrativos sobre querellas iniciadas por consumidores o por el DACO. Regla 3 del Reglamento Núm. 8034, *supra*. Toda resolución emitida por esta agencia otorgará el remedio que en derecho proceda, aun cuando la parte querellante no lo haya solicitado. Regla 27.1 del Reglamento Núm. 8034, *supra*.

## C

La Ley Núm. 7 del 24 de septiembre de 1979, *Ley de Garantías de Vehículos de Motor*, según enmendada, 10 LPRA sec. 2051 *et seq.*, fue aprobada con el propósito de proteger a las personas consumidoras en la compra de vehículos, garantizándoles que todo vehículo de motor que se adquiera cuente con las mismas garantías de fábrica que la compañía fabricante o manufacturera otorga a estas unidades en los Estados Unidos. Artículo 3 de la Ley Núm. 7 del 24 de septiembre de 1979, 10 LPRA sec. 2053. De igual forma, vela porque los intereses de las personas consumidoras sean salvaguardados ante los intereses de la manufacturera, distribuidora o vendedora. *Íd.* Por tal razón, este estatuto le otorgó al DACO la facultad de adoptar aquellos reglamentos necesarios para hacer cumplir el propósito de esta ley. Artículo 13 de la Ley Núm. 7 del 24 de septiembre de 1979, 10 LPRA sec. 2063.

En cumplimiento con la referida facultad, el DACO aprobó el *Reglamento de Garantías de Vehículos de Motor*, Reglamento Núm. 7159 de 6 de junio de 2006 (Reglamento Núm. 7159). En específico, en su Regla 22 se establece lo siguiente:

> **El Departamento podrá**, a opción del comprador, **decretar la resolución del contrato o reducir proporcionalmente el precio de venta de acuerdo**

**con el Código Civil de Puerto Rico**, en aquellos casos en el que **el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica o fabricante, dentro de los términos de la garantía de fábrica, tuvo la oportunidad razonable, para reparar uno o más defectos, pero no quiso o no pudo corregirlos**. Lo que constituye oportunidad razonable para reparar se determinará tomando en consideración las circunstancias particulares de cada caso. (Énfasis nuestro).

A pesar de lo anteriormente dispuesto, la Regla 37 del Reglamento Núm. 7159 establece que nada de lo dispuesto en el referido cuerpo reglamentario impedirá a la persona consumidora a ejercer su derecho a presentar cualquier acción reconocida en los estatutos especiales o generales de Puerto Rico o las acciones de saneamiento por vicios ocultos y redhibitorias, conforme el Código Civil de Puerto Rico, entre otras.

## D

El saneamiento por vicios ocultos se refiere a aquellas situaciones en las que, ulterior a la entrega de un bien, se evidencian algunos defectos intrínsecos que exceden a las imperfecciones menores que se pueden esperar normalmente en un producto determinado. *Polanco v. Cacique Motors*, 165 DPR 156, 166 (2005), citando a *D.A.C.O. v. Marcelino Mercury, Inc.*, 105 DPR 80 (1976). Por tal razón, el Artículo 1261 del Código Civil de 2020, 31 LPRA sec. 9851, establece que:

La persona que transmite un bien a título oneroso responde por evicción y por los defectos ocultos del bien aunque lo ignorase. Igual obligación se deben entre sí quienes dividen bienes comunes. La persona obligada responde ante el adquirente y quienes lo sucedan en el derecho por cualquier causa y título.

Nuestro ordenamiento jurídico, en el contexto de reclamaciones sobre vehículos de motor, ha establecido que, para que prospere una acción de saneamiento, debe concurrir los siguientes requisitos:

(1) no deben ser conocidos por el adquirente; (2) el defecto debe ser grave o suficientemente importante para hacer la cosa  impropia para el uso a que se le

destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella; (3) que sea preexistente a la venta, y (4) que se ejercite la acción en el plazo legal, que es el de seis meses contados desde la entrega de la cosa vendida. *García Reyes v. Cruz Auto Corp.*, 176 DPR 870, 890-891 (2008).

Además, la persona compradora del automóvil debe mostrar que este no funcionaba de forma normal y que la vendedora de este tuvo la oportunidad de corregir estos desperfectos y no lo hizo. *Íd.*, citando a *Ford Motor Co. v. Benet*, 106 DPR 232, 238 (1977).

**E**

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los foros inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el foro de origen desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro juzgador. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función del foro juzgador. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el foro recurrido. *Ortiz et al. v. S.L.G. Meaux*, 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a

*González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín,* supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los foros inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.,* pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el foro de origen, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro recurrido. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro inferior. *Íd.*

En lo atinente al caso de autos, en recursos de revisión judicial, la transcripción de la vista administrativa o una exposición narrativa de la prueba son imprescindibles cuando se cuestiona la apreciación de la prueba y la adjudicación de credibilidad del foro administrativo. Los tribunales revisores no deben intervenir con la apreciación de la prueba oral de las agencias, si no tienen forma de evaluar la evidencia presentada, debido a que no se elevó una transcripción o una exposición narrativa de la prueba. El Tribunal Supremo de Puerto Rico ha reconocido que, en ausencia de la prueba oral, difícilmente se podrá descartar la determinación impugnada. Por lo tanto, la parte interesada tiene que presentar la

prueba oral bajo la que se pretende impugnar las determinaciones de una agencia administrativa. En particular, la Regla 66 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 66, establece el trámite a seguir para que se autorice la reproducción de la prueba oral desfilada en el procedimiento administrativo. De otro lado, la Regla 29.5 del Reglamento Núm. 8034, *supra*, dispone que cualquier parte podrá solicitar copia certificada del expediente y de la transcripción de la vista, mediante el pago de los cargos correspondientes. *Graciani Rodríguez v. Garage Isla Verde,* supra, págs. 128-130.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

### III

La parte recurrente argumenta que erró el DACO al concluir que el remedio adecuado era una compensación de $5,000 y no la resolución del contrato de arrendamiento. Del mismo modo, aduce que incidió el organismo en su dictamen al no considerar la totalidad de la prueba desfilada en la vista administrativa. Finalmente, nos plantea que erró el DACO al no imponerle a la parte recurrida honorarios por temeridad. Habiendo examinado los referidos señalamientos a la luz del derecho aplicable, la prueba y la transcripción de prueba oral confirmamos la resolución administrativa recurrida. Nos explicamos.

La parte recurrente nos plantea que incidió el organismo administrativo al concluir que, debido a que el motor del vehículo *suv* fue reparado por la parte recurrida y estuvo cubierto por los términos de la garantía, no se cumplieron los elementos legales para conceder la cancelación del contrato. Pues según alega el recurrente, la parte recurrida demoró ciento cuarenta y cuatro (144) días en arreglar la unidad. Si bien es cierto que la parte recurrida demoró varios meses en arreglar el vehículo *suv,* de la prueba presentada y

desfilada surgió que estos realizaron el arreglo del motor.[14] De igual modo, la prueba desfilada demostró que la tardanza fue debido a que el primer motor que fue ordenado nunca llegó a Puerto Rico, por lo que tuvieron que recurrir a ordenar un segundo motor.[15]

Conforme a la Regla 22 del Reglamento Núm. 7159, *supra,* para que se pudiera tomar en consideración la cancelación del contrato era necesario que la parte recurrida, dentro de los términos de la garantía de fábrica, hubiese tenido la oportunidad razonable, para reparar la unidad, y no lo hubiera hecho. Al no ser este el caso, pues el vehículo *suv* fue arreglado oportunamente, concluimos que la compensación de $5,000 ordenada por el DACO —debido a la falta de diligencia apremiante de la parte recurrida al realizar el arreglo del motor— obedeció a un ejercicio razonable de apreciación de prueba por parte de la entidad recurrida. Asimismo, ello estuvo sujeto a la adecuada función de las facultades legales que le asisten al organismo administrativo, al igual que a una correcta interpretación y aplicación del derecho pertinente. En particular, la *Resolución* recurrida está basada en evidencia sustancial que no fue controvertida por la parte recurrente.

En mérito de lo antes expuesto, sostenemos la determinación recurrida. Nada en el expediente de autos sugiere que el pronunciamiento que atendemos haya sido resultado de un ejercicio arbitrario atribuible al DACO. Por tanto, toda vez que el recurrente no derrotó la presunción de corrección de la *Resolución* que nos ocupa, confirmamos la determinación administrativa recurrida.

---

[14] Véase, *Informe de inspección vehículos de motor* realizadas el 28 de febrero de 2023 y el 13 de abril de 2023 el *Expediente Administrativo*; Transcripción de la prueba oral (TPO) de la vista celebrada el 22 de agosto de 2023, en la pág. 35, líneas 7-24; págs. 36-37, líneas 21-23; pág. 47, líneas 1-10.

[15] Véase, TPO de la vista celebrada el 22 de agosto de 2023, en las pág. 26, líneas 11-23; pág. 27, líneas 2-4; págs. 64-65, líneas 18-17; págs. 66-67, líneas 22-17; pág. 68, líneas 20-23; pág. 69, líneas 13-19; pág. 84, líneas 1-5; págs. 86-87, líneas 24-7.

**IV**

Por los fundamentos que anteceden, confirmamos la determinación administrativa recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones