FORD MOTOR COMPANY, demandada, tercera demandada y recurrente, *v.* RAFAEL BENET, demandante y recurrido, MARCELINO MERCURY, INC., demandada, tercera demandante y recurrida.

*Número:* R-77-4     *Resuelto:* 26 de septiembre de 1977

*Hartzell, Ydrach, Mellado, Santiago, Pérez & Novas* y *Jorge Bermúdez Torregrosa,* abogados de la recurrente; *Rafael Benet,* por derecho propio, *Luis A. Lugo, Jr.,* y *Carlos M. Díaz Lamoutte,* abogados del recurrido; *Jorge Luis Suárez,* abogado de Marcelino Mercury, Inc.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Atraído por un anuncio Rafael Benet compró de "Marcelino Mercury, Inc." (Marcelino) el 14 de agosto de 1970 un automóvil Lincoln Continental, Modelo Mark III de 1970 por un precio de $15,000. [1] Benet entregó $5,500 de pronto,

---

[1] Textualmente decía el anuncio:

"Una Oferta Personal
y Muy Diferente
de
Marcelino
o
LINCOLN MARK III
de 1970

o El carro de más clase y lujo del mercado.

o Completamente equipado de fábrica.

quedando un balance pendiente de $9,500. Habiendo sido el auto utilizado personalmente por Marcelino Rivera, presidente de la casa vendedora, como vehículo para demostración desde octubre de 1969, [2] se le extendió al Lincoln la garantía de autos nuevos del 1970.

Al poco tiempo de Benet comenzar a usar el auto, éste empezó a evidenciar defectos en varias partes del mismo. "La transmisión daba un cantazo cuando el vehículo cambia de una velocidad a otra y se aguantaba el automóvil, teniendo el demandante que pasarla a baja ('low'). La riversa no funcionaba. El sistema eléctrico, incluyendo la ignición, no funcionaba correctamente y ocasionaba que la batería perdiera su carga y no recargara. Al aplicarse los frenos, el automóvil tendía a tirar hacia la derecha y además chillaban. Los anteriores eran los defectos principales, pero también adolecía de una serie de defectos menores, tales como el mal funcionamiento de los 'wipers', del sistema eléctrico de subir y bajar cristales, del dispositivo eléctrico que subía y bajaba la antena, del dispositivo que facilitaba abrir el baúl del carro desde adentro, etc."

De acuerdo con la garantía, Benet llevó el auto a "Marcelino" por primera vez el 10 de septiembre de 1970. Allí se le arregló el sistema eléctrico y los demás defectos que tenía.

---

Solamente Usado

Por MARCELINO

o Y cuidado como pueden cuidar en MARCELINO MERCURY, el carro personal de MARCELINO.

o Una belleza de carro. Y está Nuevo, Nuevo, Nuevo.

o A un precio de tentación (Miles de $$$ menos).

Tratar directamente con MARCELINO.

MARCELINO MERCURY

Carretera Núm. 2

Km. 8.5 Bayamón, P.R.

Teléfonos:

783-3515 y 782-6679"

[2] Según la prueba presentada ante el Tribunal Superior el automóvil fue entregado por la Ford Motor Company a Marcelino el 3 de septiembre de 1969, pero empezado a usar por éste en octubre.

El auto fue entregado a Benet y nuevamente empezó a apagarse y a manifestar los mismos defectos. Benet volvió a "Marcelino" el 4 de febrero y el 4 de mayo de 1971 le arreglaron el carro pero siguió apagándose dejando a Benet sin transportación en innumerables ocasiones.

Como el automóvil seguía con los mismos defectos el demandante recurrió a la Administración de Servicios al Consumidor, la cual luego de una vista, ordenó a "Marcelino Mercury, Inc." corregir los defectos del auto. "Marcelino" no cumplió.

Hastiado por la situación Benet entregó el auto y la licencia de éste a "Marcelino" el 15 de mayo de 1971. Expresó que no seguiría pagando el auto, que quería que se le devolviera lo que había invertido en él, $11,667.59, y que se le indemnizara por las molestias sufridas.

Por falta de pago el auto fue embargado y vendido en pública subasta a un tercero por el Banco Popular, entidad bancaria a la cual "Marcelino" había cedido el contrato.

El 14 de diciembre de 1971 Benet radicó acción sobre resolución de contrato y daños y perjuicios contra "Marcelino" ante el Tribunal Superior, Sala de San Juan. ([3]) La

---

([3]) El demandante fundamentó su acción en los Arts. 1373 y 1375 del Código Civil, 31 L.P.R.A. secs. 3841 y 3843 los cuales textualmente expresan:

*Art. 1373*

"El vendedor estará obligado al saneamiento por los defectos ocultos que tuviere la cosa vendida, si la hacen impropia para el uso a que se la destina, o si disminuyen de tal modo este uso que de haberlos conocido el comprador, no la habría adquirido, o habría dado menos precio por ella; pero no será responsable de los defectos manifiestos o que estuvieren a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que por razón de su oficio o profesión, debía fácilmente conocerlos."

*Art. 1375*

"En los casos de las dos secciones anteriores, el comprador podrá optar entre desistir del contrato, abonándosele los gastos que pagó, o rebajar una cantidad proporcional del precio, a juicio de peritos.

"Si el vendedor conocía los vicios o defectos ocultos de la cosa vendida y no los manifestó al comprador, tendrá éste la misma opción y además se le indemnizará de los daños y perjuicios, si optare por la rescisión."

demanda fue declarada con lugar condenándose a la vendedora y a la Ford Motor Company, traída al pleito por "Marcelino Mercury, Inc." como tercera demandada, a pagar solidariamente a Benet lo invertido por éste en el auto ($11,667.59), $4,000 por concepto de daños y perjuicios, más interés legal sobre ambas cantidades y $1,000 de honorarios de abogado. Se ordenó a la Ford a pagar a "Marcelino" todo lo que éste tuviese que pagar al demandante.

De esta sentencia recurre la Ford Motor Company. Acordamos revisar.

■ Ataca la recurrente la existencia de una garantía que cubriera los defectos del automóvil. Alega que la garantía solamente se extiende a los llamados productos de la compañía (*company products*) los cuales se definen como automóviles nuevos de pasajeros (*new passenger automobiles*). El auto aquí envuelto no era un auto nuevo y por lo tanto no tenía garantía. También arguye que si la garantía cubría al auto, cuando Benet llevó el auto por primera vez a "Marcelino" ya ésta había expirado, no siendo la Ford responsable.

■ No le asiste razón a la recurrente. El automóvil fue vendido con garantía la cual cubría todos los gastos de reparación y mano de obra. Establece dicha garantía en su parte pertinente:

"Ford y su concesionario garantizan que con respecto a cada automóvil nuevo de pasajeros de 1970 . . . el concesionario reparará o sustituirá, en su lugar de negocio, cualquier pieza . . . defectuosa en materiales o mano de obra . . . *dentro de los 12 meses de la fecha de su entrega original al detal o uso original por Ford o cualquiera de sus concesionarios, cualquiera que ocurra antes.*" (Énfasis suplido.) (⁴)

_____

(⁴) El texto en inglés reza así:

"Ford and its Selling Dealer Warrant, with respect to each 1970 model passenger car . . . that the Selling Dealer will repair or replace, at his place of business, any part . . . that is found to be defective in factory materials or workmanship in normal use . . . within 12 months from the date of original retail delivery or original use by Ford or any of its dealers, whichever is earlier."

A tenor con las determinaciones de hecho del tribunal a quo, el automóvil fue entregado por el fabricante al concesionario el 3 de septiembre de 1969. Pero no fue hasta octubre de ese año que Marcelino Rivera lo empezó a usar. Los 12 meses de la garantía empezaron a contar desde este uso por el concesionario y no desde la mera entrega por el fabricante a "Marcelino", venciendo la misma en octubre de 1970. Fue el 10 de septiembre de 1970 que el automóvil empezó a evidenciar defectos y que fue llevado a los talleres de "Marcelino Mercury" para reparaciones. La manufacturera, pues, debe responder junto con el concesionario a Benet.

■ Se impugna que el tribunal haya decretado la resolución del contrato de compraventa entre "Marcelino Mercury" y Benet cuando la acción debió tratarse como una *quanti minoris* ya que Benet no podía devolver el auto por éste estar en manos de un tercero ajeno al pleito. Se basa la recurrente en el Art. 1247 del Código Civil, 31 L.P.R.A. sec. 3496, el cual dice:

"La rescisión obliga a la devolución de las cosas que fueron objeto del contrato con sus frutos y del precio con sus intereses; en consecuencia sólo podrá llevarse a efecto cuando el que la haya pretendido pueda devolver aquello a que por su parte estuviese obligado.

*Tampoco tendrá lugar la rescisión cuando las cosas objeto del contrato se hallaren legalmente en poder de terceras personas que no hubiesen procedido de mala fe.*

En este caso podrá reclamarse la indemnización de perjuicios al causante de la lesión." (Énfasis nuestro.)

El demandante devolvió el automóvil cuando lo dejó en el negocio de "Marcelino Mercury" habiendo sido hecha la devolución de su prestación dentro del contrato de compraventa en época anterior a la radicación de su acción. Lo que hizo el tribunal fue en efecto reafirmar la resolución del contrato y decretar la devolución por parte del vendedor del precio pagado por el comprador. La vendedora no puede ampararse en el hecho de que el Banco Popular, a quien le había

cedido el contrato de préstamo, se incautara del vehículo por falta de pago cuando éste ya estaba en posesión de "Marcelino". Tal práctica operaría como licencia al vendedor para vedar la acción resolutoria del comprador.

Arguye la recurrente que no procedía "imponer responsabilidad a Ford sin que el demandante probara que, luego de la última reparación, el vehículo no quedó en condiciones normales de funcionamiento."

■ Para llevar a cabo la acción redhibitoria por vicios ocultos en autos defectuosos, la jurisprudencia ha establecido que solamente compete al comprador probar que el automóvil que compró no funcionaba en forma normal y que el vendedor tuvo oportunidad de corregir los defectos y no pudo o no los corrigió. *Ferrer* v. *General Motors Corp.*, 100 D.P.R. 246, 253 (1971). El defecto de fábrica principal, el sistema eléctrico, no pudo ser corregido por el vendedor haciendo al vehículo impropio para el uso a que fue destinado.

Se impugna la concesión al demandante de daños y perjuicios y que los valorara excesivamente en $4,000 ya que Ford no conocía de los vicios del automóvil anterior a la venta.

■ Procedía la concesión de daños y perjuicios. Hubo prueba creída por el tribunal de que todos los modelos Lincoln de 1970 tenían un defecto de fábrica en el sistema eléctrico que hizo que se modificara ese sistema en ese modelo. "Marcelino Mercury" y la Ford Motor Company conocían de la existencia de ese defecto y no lo manifestaron al comprador.

La Ford fue temeraria al defenderse en este pleito.

*Por los fundamentos consignados, se confirmará la sentencia recurrida.*

Los Jueces Asociados Señores Rigau y Martín no intervinieron.