Martínez Torres, Juez ponente
TEXTO COMPLETO DE LA RESOLUCION
Resolvemos en este recurso que el reglamento del Departamento de Asuntos del Consumidor (DACO) que dispone que un vehículo vendido con más de 100,000 millas de uso no tiene garantía, no impide la aplicación de las disposiciones del Código Civil de Puerto Rico que se refieren a la acción redhibitoria. Resolvemos, además, que dentro de los poderes delegados al DACO, esta agencia puede resolver una reclamación de ese tipo al amparo del Código Civil. A base de estos principios, declaramos sin lugar esta solicitud de revisión.
I
El día 26 de diciembre de 1996 el Sr. Héctor López Torres, querellante-recurrido, se personó a Aníbal Auto Sales, Inc. Adquirió allí un automóvil marca Buick, del año 1984, por la suma de $850. El odómetro del vehículo reflejaba que había recorrido unas 154,399 millas. Por ello, el vendedor especificó, en el contrato de compraventa, que: el "auto no tiene garantía por ley y tiene más de 100,000 millas".
Alegadamente, a sólo Res horas de la compraventa, el vehículo se descompuso. Acto seguido, López Torres acudió donde el vendedor, quien le indicó que llevara el auto al mecánico del "dealer", cuyo nombre es Pablito. Este último le indicó entonces a López Torres que el automóvil estaba *1189 'esbielado".
Ante la negativa de Aníbal Auto Sales, Inc. a reparar el vehículo, López Torres se querelló en el Departamento de Asuntos del Consumidor el día 2 de enero de 1997. Celebrada la vista administrativa correspondiente, el Juez Administrativo Roberto Toro Rosas, a nombre de la agencia, emitió una resolución en la que decretó la "resolución" del contrato. Fundamentó su decisión en la acción redhibitoria contemplada en el Código Civil.
Oportunamente, acude ante nos Aníbal Auto Sales, Inc., querellada-recurrente. Apunta hacia la falta de jurisdicción del DACO, y ausencia de prueba que justifique la determinación de la agencia. Sus argumentos no nos persuaden, por lo que procedemos a denegar la expedición del auto solicitado.
II
. En un escueto argumento, la querellada-recurrente Aníbal Auto Sales, Inc. señala que DACO adolece de jurisdicción en el presente recurso por tratarse de un vehículo de motor sin garantía. Apoya tal contención en el Reglamento de Garantías de Vehículos de Motor aprobado por DACO. Asimismo, señala que la enmienda al reglamento que excluye a los autos con más de 100,000 millas corridas es posterior a la jurispmdencia citada por DACO, por lo que es erróneo aplicarla a este caso.
Por deducción, el planteamiento de la recurrente Aníbal Auto Sales es que la aprobación de dicho Reglamento impide la aplicación de la doctrina de vicios ocultos. Además, argumenta que, en la alternativa, compete a los tribunales y no al DACO entender en la controversia.
Comencemos por resolver esta interrogante: ¿Puede entender DACO en una controversia sobre un vehículo de motor sin garantía? Si examinamos la delegación de poderes amplios y generales a esa agencia, la contestación es en la afirmativa.

"A. Delegación de Poderes a DACO

Hoy día, nadie cuestiona la delegación de poderes amplios a las agencias administrativas. Se acepta como válida la delegación a las agencias del poder de otorgar compensación por daños, ya sea porque específicamente en la ley habilitadora de la agencia se le concede dicha facultad o porque la misma está comprendida dentro de la delegación de poderes amplia y general que se hizo a la agencia. Véanse M & B. S., Inc. v. Depto. de Agricultura, 118 D.P.R 319 (1987); López v. Junta Planificación, 80 D.P.R. 646 (1958); D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Editorial Forum, Colombia, 1993, pág. 71; Schwartz, Administrative Law, 91-93 (3rd ed. 1991).

Esta delegación amplia y general para dilucidar controversias como la del caso de autos la encontramos en la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, 3 L.P.R.A. see. 341 et seq. Dentro de los propósitos de la agencia está el vindicar e implementar los derechos del consumidor. Id., Artículo 3, sec. 341(b). Asimismo, el Artículo G, see. 341 e(d), claramente dispone que, dentro de los poderes y facultades del Secretario está:

Poner en vigor, implementar y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a derecho, disponiéndose que las facultades conferidas en este inciso podrá delegarlas el Secretario en aquel funcionario que él entienda cualificado para ejercer dichas funciones."
Además, véase Aguilú v. P.R. Parking System, 122 D.P.R. 261, 267 (1988), donde se discute el alcance de esta sección.
En virtud de lo antes expuesto, es evidente que, junto a otras facultades, el DACO puede dilucidar la controversia planteada en este caso, aplicando el Código Civil. Consideremos, pues, las disposiciones del Código Civil consideradas por DACO al resolver la controversia del caso de marras.
*1190 B. Evicción y saneamiento
En nuestra jurisdicción el vendedor esta obligado, no sólo a la entrega de la cosa sino también a garantizar el disfrute de la misma. A esos efectos el Código Civil establece que el vendedor está obligado al saneamiento de la cosa vendida. Art. 1350 del Código Civil, 31 L.P.R.A. sees. 3801 et seq. La acción de saneamiento tiene a su vez dos modalidades: (1) saneamiento contra la evicción o defectos en el título y (2) saneamiento por los defectos ocultos que tuviere la cosa vendida. Art. 1373, id. see. 3841.
Son requisitos necesarios para que el vendedor venga obligado a sanear los vicios ocultos de la cosa vendida: (1) que éstos no deben ser conocidos por el adquirente; (2) el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso que se le destina o que disminuya de tal forma ese uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella; (3) que sea preexistente a la venta, y (4) que se ejercite la acción en el plazo legal, que es el de seis meses contados desde la entrega de la cosa vendida. Ferrer v. General Motors Corp., 100 D.P.R. 246, 255-256 (1971); In re: Bird Copying Machines, Inc., 618 F. 2d 883, 885 (1st Cir. 1980).
El Artículo 1373, supra, dispone que el vendedor estará obligado al saneamiento por los defectos ocultos de la cosa vendida, si éstos la hacen impropia para su uso o si la disminuyen de tal forma que de haberlos conocido el comprador, no la habría adquirido. De otra parte el Artículo 1374, supra, establece que "[e]l vendedor responde al comprador del saneamiento por los vicios o defectos ocultos en la cosa vendida aunque lo ignorase." Estos preceptos prescriben que el vendedor debe proporcionar al comprador la posesión útil de la cosa.
Sobre la clase de vicio a que se refiere el legislador nos comenta Manresa que "[e]l vicio redhibitorio ha de constituir, como las mismas palabras empleados [sic] por el Código lo están indicando, un defecto, una imperfección de la cosa, y un defecto de tal naturaleza, que entraña cierta importancia, pues una imperfección cualquiera, un defecto de poca monta, carece de utilidad para dar lugar a la redhibición." J.M. Manresa y Navarro, Comentarios al Código Civil Español, Tomo X, Vol. I, Reus S.A., Madrid, 1969, pág. 336.
En cuanto a los efectos que pueda tener el hallazgo de vicios ocultos en determinado objeto, el Artículo 1375, supra, dispone que en los casos relativos a dichos defectos el comprador tiene derecho a presentar dos acciones: la acción redhibitoria en la que reclama la rescisión del contrato de compraventa; o la acción quanti minoris donde pide una reducción en el precio acordado. Boyd v. Tribunal Superior, 101 D.P.R. 651, 655 (1973); Márquez v. Torres Campos, 111 D.P.R. 854, 862 (1982). Se ha resuelto que "[e]l paso inicial para precisar la aplicación de estas dos acciones edilicias que aquí nos ocupan consiste en determinar lo que constituye vicio o defecto oculto." D.A.C.O. v. Marcelino Mercury, Inc., 105 D.P.R. 80, 83-84 (1976). Para la determinación sobre cuáles son esos defectos ocultos que dan lugar al saneamiento, se habrá de tomar en consideración la verdadera intención de las partes para el uso adecuado de la cosa, y los alegados defectos que aminoran su uso, según cada caso. García Viera v. Ciudad Chevrolet, Inc., 110 D.P.R. 158, 162 (1980).
Castán señala que para que los vicios ocultos den lugar al saneamiento deben concurrir los siguientes requisitos:
"(1) que sean ocultos, es decir, que no eran, ni pudieron ser conocidos por el adquiriente de la cosa; (2) que el defecto sea grave de modo que haga la cosa impropia para el uso a que se destina; (3) el defecto debe haber existido antes de la venta; (4) que se ejercite la acción en el plazo de seis (6) meses contados desde la entrega de la cosa vendida." J. Castán Tobeñas, Derecho Civil Español. Común y Foral, Tomo IV, Reus S.A., Madrid, 1993, págs. 133-134. Veanse Ferrer v. General Motors Corp., supra, pág. 255; Boyd v. Tribunal Superior, supra, pág. 658.
31 término dispuesto para ejercitar la acción redhibitoria es de seis meses, contados a partir de la entrega de la cosa vendida. Art. 1379, supra sec. 3847. Sin embargo, el plazo comienza a decursar no desde la fecha del perfeccionamiento del contrato, sino desde el día en que se interrumpieron las
*1191 gestiones de inteligencia entre las partes. Ferrer v. General Motors Corp, supra; In re: Bird Copying Machines, Inc., supra.
El comprador de un vehículo de motor, trátese de vehículos nuevos o usados, tiene derecho a ampararse en la acción redhibitoria emergente de un vicio oculto en el automóvil comprado. Berríos v. Courtesy Motors of P.R., Inc., 91 D.P.R. 441, 445 (1964). Solamente compete al comprador probar que el automóvil que compró no funcionaba en forma normal y que el vendedor tuvo oportunidad de corregir los defectos y no pudo o no los corrigió. Ford Motor Co. v. Benet, 106 D.P.R. 232 (1971). La carga de la pmeba sobre el uso indebido de la cosa comprada le corresponde al vendedor. In re: Bird Copying Machines, Inc., supra.
Determinada la existencia de la obligación de saneamiento por defectos ocultos bajo los Artículos 1374 y 1375 del Código Civil, supra, secs. 3842 y 3843, el comprador tiene la facultad absoluta de optar entre solicitar la resolución del contrato de compraventa, abonándosele los gastos que pagó, o requerir la rebaja proporcional del precio. D.A.C.O. v. Marcelino Mercury, Inc., 105 D.P.R. 80 (1976); Ferrer v. General Motors Corp., supra.
Evidentemente, el DACO tiene jurisdicción para dilucidar controversias sobre vicios ocultos. El hecho de que el departamento adopte reglamentos acordes con aquellos poderes que le fueron delegados no desplaza las disposiciones legales del Código Civil. Además, la delegación de un amplio poder adjudicativo ha sido debidamente validada por el Tribunal Supremo. Quiñones Irizarry v. San Rafael Estates, S.E., Opinión de 30 de junio de 1997, 97 J.T.S. 109; Aguilú v. P.R. Parking System, supra.
Reiteramos que la disposición reglamentaria sobre la ausencia de garantía para aquellos vehículos con más de 100,000 millas no impide la aplicación de la acción redhibitoria por el DACO. De un análisis del contrato aquí en cuestión se desprende que la cláusula sobre garantía se refiere más bien a una notificación. Esta notificación informaba al comprador López Torres sobre la ausencia de garantía reglamentaria, ya que el vehículo tenía más de 100,000 millas. Ello no constituye una renuncia a la responsabilidad por evicción y saneamiento que le impone el Código Civil al vendedor. Después de todo, la acción de saneamiento es una de tipo especial, propia de los contratos de compraventa. Márquez v. Torres Campos, supra.
Ill
Las decisiones administrativas tienen a su favor una presunción de legalidad y corrección. A.D.C.V.P. v. Tribunal Superior, 101 D.P.R. 875, 880 (1974). Debido a esto, los tribunales deben ser cautelosos al intervenir con dichas determinaciones. Metropolitana, S.E. v. A.R.P.E., Opinión de 10 de abril de 1995, 95 J.T.S. 39, pág. 767.
Ello es así, por cuanto dichos organismos cuentan con una materia en la que entienden día tras día. La interpretación que del estatuto y sus reglamentos realicen las agencias, y los fundamentos que aduzcan en apoyo de la misma, resultan de gran ayuda para los tribunales de justicia, al pasar juicio sobre la corrección de las decisiones emitidas por dichos organismos. Véase, M & V Orthodontics v. Negociado de Seguridad de Empleo, 115 D.P.R. 183, 189 (1981); Rubín Ramírez v. Trías Monge, 111 D.P.R. 481, 484-485 (1981).
El criterio rector de revisión judicial en materia de decisiones administrativas consiste en determinar si existe una base racional respaldada por evidencia sustancial que sostenga la decisión impugnada. Si la totalidad del expediente administrativo sostiene las determinaciones adoptadas por la agencia, los tribunales no las sustituiremos por nuestro propio criterio. Facultad de las Ciencias Sociales Aplicadas, Inc. v. Consejo de Educación Superior, Opinión de 2 de junio de 1993, 93 J.T.S. 88, pág. 10783; M. & V. Orthodontics v. Negociado de Seguridad de Empleo, supra. Esto es consistente con el principio de autorrestricción, predicado en que los procedimientos y las decisiones de los organismos administrativos especializados tienen una presunción de regularidad y corrección, por lo que merecen deferencia mientras la parte que la impugne no produzca suficiente prueba para derrotarla. Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692, 699-700 (1975). Por ello, la revisión judicial de decisiones administrativas debe limitarse a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituyó un abuso de *1192 discreción. San Vicente v. Policía de P.R., Opinión de 12 de noviembre de 1996, 96 J.T.S. 148, pág. 332; Metropolitana S.E. v. A.R.P.E., supra, pág. 767; Fuertes v. A.R.P.E., Opinión de 17 de diciembre de 1993, 93 J.T.S. 165, pág. 11385. Por ello, es norma clara que para que un tribunal pueda decidir que la prueba en el expediente administrativo no es sustancial para sostener la determinación administrativa, es necesario que la parte afectada le demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto que sea evidente que la decisión del organismo administrativo fue arbitraria y no está justificada por una evaluación justa del peso de la prueba que la agencia tuvo ante sí. Metropolitana S.E. v. A.R.P.E., supra, pág. 767; P.R.T.C. v. Unión Independiente de Empleados, Opinión de 30 de junio de 1992, 92 J.T.S. 93, pág. 9710.
Aníbal Auto Sales, Inc., querellada-recurrente, no ha descargado la obligación que le impone la jurisprudencia. Tampoco surge del expediente que la resolución del Departamento de Asuntos del Consumidor fuese ilegal, arbitraria o irrazonable. Por el contrario, de los documentos que obran en autos se hace evidente que el DACO utilizó su conocimiento especializado para determinar que el Buick adquirido por el recurrido López Torres padecía de un vicio oculto, que su motor se "esbieló" con menos de 24 horas de la compraventa y que el defecto hizo el auto inservible. No habremos de intervenir con tal ejercicio legítimo de discreción, en circunstancias donde las determinaciones de la agencia son razonables y compatibles con los propósitos de la ley, y están avaladas por evidencia sustancial que obra en el expediente administrativo.
IV
En virtud de todo lo anterior, se deniega la expedición del auto solicitado.
Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General