ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| ANIBAL SANTIAGO SÁNCHEZ<br><br>Recurrido<br><br>v.<br><br>AVRO CORP H/N/C AVILES AUTO; POPULAR AUTO, LLC<br><br>Recurrente | KLRA202400253 | *Revisión Judicial* procedente del DACo-Regional de Ponce<br><br>Querella Núm.: PON-2023-0003887<br><br>Sobre: Compra Venta de Vehículos de Motor |

Panel integrado por su presidenta, la Juez Ortiz Flores, el Juez Rivera Torres, la Juez Rivera Pérez y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de octubre de 2024.

Comparece ante nos la parte recurrente, AVRO Corp. h/n/c Avilés Auto, LLC (Avilés Auto), quien nos solicita la revocación de la *Resolución* del Departamento de Asuntos al Consumidor (DACo), emitida el 19 de abril de 2024 y notificada el día 22 siguiente. En la referida determinación, el DACo declaró ha lugar la querella de epígrafe instada por la parte recurrida, el Sr. Aníbal Santiago Sánchez (señor Santiago Sánchez). En consecuencia, DACo decretó la resolución del contrato de compraventa entre el señor Santiago Sánchez y Avilés Auto.

**I.**

El 6 de marzo de 2023, el señor Santiago Sánchez presentó ante DACo una querella contra Avilés Auto sobre la compraventa de un vehículo de motor marca Chevrolet, modelo Colorado del año 2018 con tablilla 983172 (vehículo).[1] Adujo el señor Santiago Sánchez que el 11 de junio de 2022, adquirió de Avilés Auto el vehículo. Alegó que, desde ese día, el vehículo presentó desperfectos

---

[1] Apéndice del Recurso, págs. 16-26.

Número Identificador

SEN2024_____

y que Avilés Auto no reparó de manera satisfactoria el vehículo. Por ello, el señor Santiago Sánchez solicitó la cancelación del contrato de compraventa, el reembolso de los pagos realizados, pagos por peaje y que se detuviera el cobro de la deuda.

Luego de varios trámites procesales, DACo celebró una vista administrativa el 3 de octubre de 2023 ante la Juez Administrativa, Lcda. Migdalia Rodríguez Figueroa. A esta vista comparecieron las partes de epígrafe representadas por sus representantes legales. Compareció, además el Gerente de servicios de Avilés Auto, el Sr. Jean Pérez Molina (señor Pérez Molina). En la vista argumentativa, se evaluó la prueba documental y testifical que obra en el expediente y que fue admitida en evidencia. Además, se tomó en consideración la credibilidad que le mereció al DACo los testimonios vertidos en la vista.

El 19 de abril de 2024, DACo emitió una *Resolución* en la cual emitió las siguientes determinaciones de hechos:

1. La parte querellante de nombre Aníbal Santiago Sánchez (en adelante el Querellante), mayor de edad reside en el Barrio Marín Alto en Patillas, Puerto Rico.
2. La parte co-querellada se identifica como AVRO CORO h/n/c AVILES AUTO, *dealer* autorizado para hacer negocios en Puerto Rico, #435528 Registro de Corporaciones del Departamento de Estado de P.R.
3. Popular Auto LLC, parte co-querellada es la entidad que otorgó al Querellante financiamiento mediante Contrato de Ventas Al Por Menor A Plazos.
4. El 11 de junio de 2022 el Querellante adquirió el [*sic*] en el concesionario querellado Avilés Auto (AVRO CORP. h/n/c AVILAS AUTO), localizado en el Mall de San Juan, Puerto Rico el siguiente vehículo de motor: Chevrolet Colorado año 2018, usado, cuatro puertas, color rojo y con numero de tabilla 983-172 y número de serie 1GCGSCEA5J1158194.
5. Conforme [al] Contrato de Compraventa el precio de unidad es de $32,995.00; crédito de $2,500.00 Balance a Pagar $30,495.00. **fecha: 11** [de] **junio** [de] **2022.** El contrato no indica en odómetro el millaje al momento de la compraventa.
6. Conforme [al] Contrato de Compraventa el primer Plazo fue de $723.85 el 11 de julio [de] 2022; 64 plazos mensuales serán de $543.85 con fecha del 11 de agosto [de] 2022. Un último pago será de $9,898.50.

7. Conforme [al] Contrato de Venta A Por Menor A Plazos el precio de unidad es de $32,995.00; Pronto Pago de $2,500.00 Cantidad Financiada $30,675.00. Primer Pago fue de $723.85 (11 de julio [de] 2022) con 64 pagos mensuales de $543.85 (11 de agosto [de] 2022). Un último pago será de $9,898.50 (11 [de] diciembre [de] 2027) fecha: **11** [de] **junio** [de] **2022.**

8. El 6 de marzo de 2023, fue presentada la querella de epígrafe ante la Oficina Regional de Caguas siendo la parte querellante, el señor Aníbal Santiago [Sánchez] en la cual en extenso relato por días con fechas expone problemas de acondicionador de aire, prende luz de cambio de aceite, de bolsas de aire, liqueo de aceite, ruido; tapa negra que estaba en el cajón ya no estaba, problema con bluetooth, asiento trasero sucio (pelos de perro o gato); cajón de guagua con tierra de playa, se entregó con tanque de gasolina lleno ($111.00) se recibió con 1/4 de gasolina; otro nombre de teléfono enlazado en bluetooth;, [*sic*] no ha utilizado el vehículo a la fecha del 5 de agosto de 2022 que está en Avilés Auto Cayey, la pieza no ha llegado; auto prestado Mazda 6 se quedaría sin marbete y se le entregó un Hyundai (no le dieron licencia de ese vehículo por si algo pasaba); al recoger el vehículo (29 [de] octubre [de] 2022) se entera que no tiene tapa del cajón, ni sensor de bolsas de aire; no repararon el liqueo; que dijeron haber bajado la transmisión y colocaron juntas de cran, entregado para reparar con 78,947 millas se la entregan con 80,333; notificó de ruido y vibraciones en la transmisión; haber entregado $1,000.00 para seguro anual sin que se le enviara o entregara recibo (junio 2022).

La parte querellante solicitó ante DACO, cancelación del contrato; reembolso de los pagos realizados, pagos por peaje, que se detenga el cobro de la deuda.

9. Como parte del proceso, el 14 de julio de 2023 se realizó inspección del vehículo a cargo del técnico automotriz del DACO, Carlos Molini Santos[,] ante la comparecencia del Querellante (y un representante de Avilés Auto (Jean Pérez) Lugar: *Dealer* Avilés Auto Carr. 1 Km. 51.8 en Cidra.

10. El técnico automotriz del DACO realizó un informe en el cual expuso de lo siguiente:

El *Dealer* se encuentra cerrado, vacío y en su interior está la unidad en controversia. Unidad se encuentra sucia en su exterior. Se observ[ó] que la unidad no tiene el *cover* superior del cajón trasero. La unidad se encuentra cerrada y no están las llaves para abrirla y encenderla. Se observ[ó] mancha negra en la parte trasera izquierda de la cabina; esto se puede remover con un pulido de pintura. Se observaron varias gotas de aceite en el área de abajo entre el motor y la transmisión automática. La unidad no se pudo inspeccionar, ya que no están las llaves y los portones están cerrador [*sic*]. El Querellado hará las gestiones para remover la unidad hasta su otro *Dealer* en Caguas, verificará la unidad; esto para tratar de llegar a un acuerdo con el

Querellante. El Querellante desea cambio de unidad acreditando los pagos realizados.

La parte Querellante Aníbal Santiago Sánchez, notificará por escrito a DACO dentro de los 15 días a partir de la notificación de este informe si se llegó a algún acuerdo con Avilés Auto. De no notificar en el término señalado se presumirá el cumplimiento; procediéndose, a discreción del Juez Administrativo, con el Cierre y Archivo de la querella.

Estimado: Pulir pintura $65.00 Lavar unidad por fuera $75.00 Diagnosticar fuga de aceite entre motor y transmisión $95.00 Instalar *cover* del cajón trasero $950.00 Chequeo general $85.00.

El Querellante notificó al DACO (27 de septiembre de 2023) que no se han comunicado.

11. El día 12 de septiembre de 2023 se emitió notificación a las partes sobre la vista administrativa a celebrarse el 3 de octubre de 2023. A la misma Comparecieron todas las partes.

12. **Conforme a lo declarado por el querellante Aníbal Santiago Sánchez en la vista administrativa se desprende que:**

    a. Compró (11-junio-2022) el vehículo Chevrolet Colorado año 2018 en el Mall of San Juan, se lo entregaron sin marbete. (nota: conforme a querella desde febrero no tenía marbete).

    b. En el camino a su casa prendió la luz símbolo de mantenimiento, de bolsas de aire; el aire condicionado se apagó. Al llegar a su casa se percató de un "liqueo" de aceite.

    c. Llamó al vendedor, quién le indicó que llevara el vehículo. Lo llevó al siguiente sábado. (nota: 18-junio). Allí estuvo de una (1) a dos (2) semanas.

    d. El 6 de julio de 2022 le entregaron el vehículo, pero le faltaba la tapa negra del cajón de la parte de atrás; lo entregaron sin aire, seguía el liqueo. (Nota: en noviembre 2022 notificaron al querellante que la cubierta de atrás del cajón había llegado).

    El 9 de julio 2022 entrega la guagua a Avilés Auto para arreglo de liqueo aceite, aire acondicionado, bolsas de aire; brindaron vehículo Mazda 6.

    e. El 24 de agosto [de] 2022, el *dealer* entregó un vehículo Mazda el cual utilizo por dos meses, al quedarse sin marbete. El *dealer* le entregó un vehículo Hyundai, que utilizó por un mes. Ambos vehículos no le servían para su trabajo de construcción, en Guaynabo, propósito por el cual había comprado el vehículo Chevrolet Colorado.

    f. Luego de tres meses, el 29 de octubre de 2022, el querellante fue al *dealer* a buscar su vehículo y el mismo a[ú]n no tenía la tapa negra del cajón (cubierta del cajón), ni el sensor de la bolsa de aire, y el "liqueo" no lo repararon, le dijeron que bajaron la transmisión y le colocaron las juntas de los cranes, pero todo sigue igual.

g. El querellante expresó que entregó el automóvil con 78,947 millas y lo devolvieron con 80,335 millas. (nota del juez: 2,335 millas recorridas).

h. El querellante expresó que el automóvil tenía pelos de animales y en el cajón de atrás vio arena. Según expresó el querellado al Sr. Aníbal Santiago, al desprenderse la cubierta del cajón mientras la guagua era conducida, le dio un golpe en la orilla del cristal de atrás parte del conductor.

i. El querellante verbalizó que luego de octubre de 2022 tuvo la guagua parada en su casa porque sabía que le daría problema[s].

j. El 10 de diciembre de 2022 el querellante llevó la guagua al *dealer* para servicio en garantía. La guagua no le fue entregada. Actualmente el querellante no tiene la guagua, la tiene Avilés Auto de Cayey.

k. Referente a la inspección de DACO, declaró el Querellante: el *dealer* estaba cerrado, ya no pertenecía al querellado, y que hasta donde le consta el vehículo se encuentra en Avilés Auto Cayey.

13. **Conforme a lo declarado por el querellante Aníbal Santiago Sánchez en el contrainterrogatorio y re-directo surge que:**

a. Trabaja en construcción, la guagua es para el trabajo, poder ir al trabajo y algo para moverse.

b. Usó la guagua de sábado a sábado. Su millaje era cercano al que declaró.

c. Del 18 de junio @ 6 de julio (2022) recibió servicio en garantía. (se aclara que no fue de mantenimiento).

d. Del 9 de julio @ 29 octubre (2022) tuvo dos vehículos: Mazada y Hyundai mientras la guagua estaba en servicio.

e. En octubre (2022) la guagua estuvo parada en su casa.

f. El 10 de diciembre (2022) la guagua estuvo en servicio en el *dealer*; lo llamaron para recogerla pero no estaba terminada.

g. Sí intentaron entregarle en su residencia, en grúa la guagua en semana anterior a la vista (vista: 3 octubre) y se negó a recibirla. Le dijeron (*dealer*) que la guagua es de su propiedad que tiene que ir a buscarla. Desconoce si está reparada.

14. En vista administrativa no se presentó documento de los servicios brindados por el *dealer* Avilés Auto, al vehículo del querellante que muestre diagnóstico y trabajo realizado.

15. El señor Jean Pérez Molina se desempeña como Gerente de Servicios de Auto para el *dealer* Avilés Auto. Entre sus funciones está encargarse de las unidades, estar claro de estas, ubicar las garantías de los clientes. Así declaró de lo siguiente:

a. Para la inspección con DACO el *dealer* estaba cerrado porque movieron sus operaciones a las facilidades del Mall of San Juan por haberse terminado el contrato de arrendamiento del local en Cayey.

    b. Tiene conocimiento de que la guagua está reparada.

    c. Repararon las cosas por lo que el querellante llevó la unidad, pero no recuerda cu[á]les fueron esas cosas. (respuesta en contrainterrogatorio)

    d. Llamaron al querellante por teléfono para llevarle el vehículo en grúa pero se negó.

16. En referencia a la Notificación a la entidad financiera, conforme al contrato de Ventas Al Por Menor a Plazos se dispone del Aviso al Cesionario en la pág. 3 inciso (3): Si el Vendedor no hubiere cumplido con todas sus obligaciones para con Usted, Usted deberá notificarlo al Cesionario, por escrito, mediante correo certificado con acuse de recibo a la dirección indicada en este aviso dentro de los 20 días siguientes a la fecha en que tenga conocimiento de algún hecho que pueda d [*sic*] dar lugar a una causa de acción o defensa que surja de la [*sic*] la venta y que pudiera tenerte en contra del vendedor. Cualquier reclamación al VENDEDOR debe ser referida a la administración de Popular Auto LLC P O Box 70370 San Juan PP.R. 00936-8370.

17. El querellante notificó a Popular Auto LLC el 7 de marzo de 2023 por correo certificado. Previamente [m]ediante llamada monitoreada notificó al Banco.[2] (Énfasis en el original).

Por estos hechos, DACo determinó que procedía la resolución del contrato de compraventa bajo la figura de saneamiento por vicios ocultos. Determinó DACo que el señor Santiago Sánchez demostró que desde el mismo día en que compró el vehículo, el mismo presentó defectos intrínsecos que superan imperfecciones menores que cabe esperarse normalmente en un producto. Sobre el testimonio del señor Pérez Molina, DACo determinó que este conocía de las reparaciones del vehículo, pero no pudo precisar cuales fueron las reparaciones. Por otro lado, DACo determinó que el señor Pérez Molina no produjo documentación alguna que especificara el diagnóstico del vehículo y las reparaciones que se le realizaron. Por todo esto, DACo ordenó la resolución del contrato de compraventa y el reembolso de todas las mensualidades pagadas por el señor Santiago Sánchez a Popular Auto LLC. Finalmente, DACo concluyó que Avilés Auto asumió una conducta que hizo necesaria la

---

[2] Apéndice del Recurso, págs. 1-5. Énfasis nuestro.

presentación del recurso de epígrafe y por ello, le impuso el pago de honorarios de abogado.

Insatisfecho, Avilés Auto acudió oportunamente ante este foro revisor y señaló la comisión de los siguientes errores:

**ERRÓ EL DACO AL CONCLUIR QUE SE CONFIGURA LA ACCION DE SANEAMIENTO POR VICIOS OCULTOS.**

**ERRÓ EL DACO AL IMPONER HONORARIOS DE ABOGADO EN AUSENCIA DE TEMERIDAD.**

Luego de conceder el término reglamentario a la parte recurrida para que presentara su alegato, el señor Santiago Sánchez compareció mediante escrito en oposición.

**II.**

**A.**

Revisamos la *Resolución* de DACo al palio de la Ley Núm. 38 de 30 de junio de 2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9601 *et seq.* La Sección 4.5 de la LPAUG, 3 LPRA sec. 9675, que versa sobre el alcance de la revisión judicial, dispone que este tribunal intermedio sostendrá las determinaciones de hechos de las decisiones de las agencias, si se basan en evidencia sustancial que obra en el expediente administrativo; revisará en todos sus aspectos las conclusiones de derecho; y podrá conceder al recurrente el remedio apropiado si determina que a éste le asiste el derecho.

Es sabido que, al revisar las determinaciones administrativas finales, los tribunales apelativos estamos compelidos a conceder deferencia, por la experiencia y conocimiento pericial que se presume tienen los organismos administrativos para atender y resolver los asuntos que le han sido delegados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606,

626 (2016). Al respecto, el Tribunal Supremo de Puerto Rico ha reiterado que las determinaciones de las agencias "poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas". *Rolón Martínez v. Supte. Policía, supra*; *Torres Rivera v. Policía de PR, supra*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012); *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002-1003 (2011). Por ende, nuestra intervención sólo se justifica cuando el ente ejecutivo haya obrado de forma arbitraria, ilegal o irrazonable. En esas circunstancias, entonces, cederá la deferencia que ostenta en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra. *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009). En torno a esto, en *Torres Rivera v. Policía de PR, supra*, el Tribunal Supremo expuso las normas básicas sobre el alcance de la revisión judicial:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida**. (Énfasis nuestro). *Torres Rivera v. Policía de PR, supra*, pág. 628.

Así, pues, es norma asentada que **el norte al ejercer nuestra facultad revisora es el criterio de razonabilidad**. *Super Asphalt v. AFI y otro, supra*, pág. 821; *Graciani Rodríguez v. Garage Isla Verde, supra*, pág. 127; *Torres Rivera v. Policía de PR, supra*, pág. 626; *Empresas Loyola v. Com. Ciudadanos*, 186 DPR 1033, 1042-1043 (2012). Por lo tanto, intervendremos únicamente cuando el organismo recurrido haya actuado de una manera tan irrazonable

que su actuación constituya un abuso de discreción. *Super Asphalt v. AFI y otro, supra*, pág. 821; *Graciani Rodríguez v. Garage Isla Verde, LLC, supra*, pág. 127; *Rolón Martínez v. Supte. Policía, supra*.

**B.**

La Núm. 7 de 24 de septiembre de 1979, *Ley de Garantías de Vehículos de Motor*, 10 LPRA sec. 2051 *et seq.*, delega a DACo la responsabilidad de implantar sus disposiciones y adoptar la reglamentación necesaria sobre el particular. Art. 13 Ley Núm. 7-1979, 10 LPRA sec. 2063. En el ejercicio de esta facultad, DACo promulgó el *Reglamento de Garantías de Vehículos de Motor*, Reglamento Núm. 7159 de 6 de junio de 2006 (Reglamento 7159). Conforme la Regla 2 del Reglamento 7159, se aspira proteger adecuadamente la inversión de los consumidores en la adquisición de vehículos de motor, asegurando que **el vehículo sirva los propósitos para los que fue adquirido, y que reúna las condiciones mínimas necesarias para garantizar la protección de su vida y propiedad**.

La Regla 3 del Reglamento 7159, *Alcance y aplicación*, dispone que la reglamentación aplica "a toda persona natural o jurídica que se dedique por sí misma, o por medio de su representante o agente, o como agente o representante del fabricante, o como intermediario de otra persona, a la venta y/o servicio de vehículos de motor nuevos o usados en Puerto Rico". Por igual, la Regla 4 del Reglamento 7159 dispone expresamente que su **interpretación es liberal a favor del consumidor**. Véase, *Polanco v. Cacique Motors,* 165 DPR 156, 164 (2005). Por su parte, la Regla 5, esta define "**defectos**" como "faltas que exceden las imperfecciones que cabe normalmente esperar en un vehículo de motor. No es requisito que dichos defectos imposibiliten el uso del vehículo de motor, siempre que mermen notablemente su valor, uso y/o seguridad".

En cuanto a la Regla 15.1, la norma establece que el distribuidor autorizado y el vendedor, **a nombre y en representación del fabricante o manufacturero**, deberán honrar la garantía de fábrica del fabricante o manufacturero, en términos de **millaje y duración**. "**Esto independientemente del lugar donde y de la persona de quien el consumidor adquiera dicho vehículo y que el fabricante o manufacturero brinde el servicio de garantía de fábrica en un lugar de Puerto Rico**". (Énfasis nuestro). Aun cuando la precitada regla se refiere a los autos nuevos, toda vez que su letra especifica los criterios de millaje y duración, se puede colegir que aplica igualmente a los autos usados, siempre y cuando cumplan con los parámetros de la garantía.

Por último, la Regla 37 preceptúa que nada de lo dispuesto en el Reglamento 7159 limita el derecho del consumidor a ejercer cualquier acción reconocida en nuestro ordenamiento jurídico, según estatuidas en el Código Civil o leyes especiales. Por tanto, DACo, en su deber de velar por la protección de los consumidores, debe evaluar las acciones de saneamiento presentadas ante sí, conforme con las leyes especiales, su reglamentación, el Código Civil y la jurisprudencia interpretativa. *Rodríguez v. Guacoso Auto*, 166 DPR 433, 439 (2005). Siendo así, el recurso que nos ocupa se rige por la referida Ley 7, el Reglamento 7159 y, en su defecto, por las disposiciones del Código Civil de 2020, con relación los vicios redhibitorios. Arts. 1267-1270, 31 LPRA ants. secs. 9871-9874.

**C.**

En virtud de las aludidas disposiciones del Código Civil de 2020, en lo que respecta a la acción de saneamiento por vicios ocultos, entre las obligaciones que impone el ordenamiento a un vendedor, se encuentra su responsabilidad ante los vicios o defectos ocultos que tuviere la cosa vendida, conocido como saneamiento por vicios o defectos ocultos. Art. 1261 del Cód. Civil de 2020, 31 LPRA

ant. sec. 9851. Dispone el Código Civil que "la persona que transmite un bien a título oneroso responde por evicción y por los defectos ocultos del bien aunque lo ignorase". *Id.* A los vicios ocultos se les denomina redhibitorios, ya que pueden deshacer la venta. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 889 (2008). En torno a los derechos del adquiriente por vicios ocultos en la cosa vendida, el Artículo 1263 del Código Civil de 2020, 31 LPRA ant. sec. 9853, dispone lo siguiente:

> El adquirente puede optar por reclamar la subsanación o reparación de los defectos, la entrega de un bien equivalente o resolver total o parcialmente el contrato.
>
> La resolución total solo procede si la evicción o el defecto recaen sobre un aspecto determinante para la adquisición del bien. La misma regla es de aplicación en caso de adquisición conjunta de varios bienes.
>
> [...]
>
> En caso de vicio redhibitorio, el adquirente solo tiene derecho al resarcimiento de los daños sufridos si el transmitente actuó con dolo.

Siendo la causa de la venta para el comprador adquirir la cosa y servirse de ella, dicho propósito dejaría de realizarse si una vez entregada la cosa, se ve imposibilitado de aplicarla a los usos que le son propios. *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 890, que cita a *Ferrer v. General Motors Corp.*, 100 DPR 246, 255 (1971). Por lo tanto, conforme a las disposiciones de nuestro ordenamiento legal, el comprador puede optar por desistir del contrato, con el abono de los gastos que pagó. Esta acción redhibitoria representa la restitución *in integrum*, ya que coloca a las partes en la misma condición en la que se hallaban antes de la compraventa. En la alternativa, se puede rebajar una cantidad proporcional del precio. Dicha acción *quanti minoris* conlleva la restitución del precio percibido en proporción a la pérdida de valor de la cosa como consecuencia del defecto.

Al establecer qué son vicios redhibitorios, el Tribunal

Supremo ha adoptado el criterio de "**aquellos defectos que exceden de las imperfecciones menores que cabe esperar normalmente en un producto determinado**, no siendo necesario que dichos defectos imposibiliten el uso de la cosa vendida, siempre que mermen notablemente su valor". (Énfasis nuestro). *García Reyes v. Cruz Auto Corp., supra*, pág. 891, que cita a *García Viera v. Ciudad Chevrolet, Inc.*, 110 DPR 158, 162 (1980); *D.A.C.O. v. Marcelino Mercury, Inc.*, 105 DPR 80, 84 (1976). En fin, para que proceda una acción de saneamiento por vicios ocultos deben concurrir los siguientes requisitos: (1) no deben ser conocidos por el adquirente; (2) **el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella**; (3) que sea preexistente a la venta, y (4) que se ejercite la acción en el plazo legal, que es el de seis meses contados desde la entrega de la cosa vendida. *García Reyes v. Cruz Auto Corp., supra*, págs. 890-891.

**D.**

La Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, permite la imposición de honorarios en caso de que cualquiera de las partes, o su abogado, procedan con temeridad o frivolidad. En su parte pertinente, el inciso (d) de la mencionada norma establece lo siguiente:

> En caso [de] que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. 32 LPRA Ap. V, R. 44.1 (d).

Nuestro Tribunal Supremo ha definido el concepto de temeridad "**como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que**

**obliga que la otra parte incurra en gestiones evitables**". (Énfasis nuestro). *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Según lo ha expresado el Tribunal Supremo, la penalidad aspira "disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte". *Id.*, pág. 505. La determinación de si una parte obró con temeridad descansa en la sana discreción del juzgador. *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005). La imposición del pago de honorarios de abogado es imperativa cuando se concluye que una parte incurrió en temeridad. *Id.* En cuanto a los criterios de revisión, por constituir un asunto discrecional del tribunal sentenciador, los foros apelativos solo intervendremos en dicha determinación cuando surja un claro abuso de discreción. *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).

### III.

En la controversia ante nuestra consideración, Avilés Auto alega que DACo erró al concluir que se configura la acción de saneamiento por vicios ocultos. Arguye la parte recurrente que el señor Santiago Sánchez, como comprador, tenía el peso de la prueba para establecer que la unidad adquirida tenía algún defecto que impidiera su normal funcionamiento. Aduce Avilés Auto que la parte recurrida solo declaró que llevó el vehículo a Avilés Auto en tres ocasiones y que en la tercera ocasión no quiso recoger el vehículo, por lo que desconoce si el mismo estaba reparado o no. Por esto, Avilés Auto alega que DACo concluyó erróneamente que le correspondía el peso de la prueba al concesionario y no al señor Santiago Sánchez. De igual forma, impugna la concesión de honorarios por temeridad.

Del expediente surge que el señor Santiago Sánchez llevó su vehículo de motor en varias ocasiones a Avilés Auto para

reparaciones desde el primer día. Surge también que el técnico automotriz de DACo no pudo inspeccionar el vehículo porque el concesionario de Avilés Auto estaba cerrado y vacío. Sin embargo, el técnico automotriz pudo observar varias gotas de aceite en el área de abajo entre el motor y la transmisión automática. Surge, además, que Avilés Auto aseguró haber reparado el vehículo. No obstante, no presentó prueba alguna de que el vehículo fue reparado.

Como bien señaláramos, para que proceda una acción de saneamiento por vicios ocultos deben concurrir los siguientes requisitos: (1) no deben ser conocidos por el adquirente; (2) **el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella**; (3) que sea preexistente a la venta, y (4) que se ejercite la acción en el plazo legal, que es el de seis meses contados desde la entrega de la cosa vendida. *García Reyes v. Cruz Auto Corp.*, *supra.*

Ciertamente, nuestra jurisprudencia dispone que "*para llevar a cabo la acción redhibitoria por vicios ocultos en autos defectuosos, solamente compete al comprador probar que el automóvil que compró no funciona en forma normal y que el vendedor tuvo oportunidad de corregir los defectos y no pudo o no los corrigió*". *Pérez Vélez v. VPH Motors Corp.*, 152 DPR 475, 490 (2000), citando *Ford Motor Co. Benet*, 106 DPR 232, 238 (1978). En *Pérez Vélez v. VPH Motors Corp.*, el Tribunal Supremo determinó que el concesionario de autos querellado no fue diligente ni riguroso en detectar la causa del defecto presentado por el vehículo y repararlo adecuadamente. *Id.*

En el presente caso, Avilés Auto asegura haber reparado el vehículo del señor Santiago Sánchez. No obstante, el técnico automotriz de DACo no pudo inspeccionar el vehículo porque el concesionario de Avilés Auto estaba cerrado y vacío. No empecé a

esto, recordemos que el técnico automotriz alcanzó a observar varias gotas de aceite en el área de abajo entre el motor y la transmisión automática. Además, Avilés Auto no presentó evidencia alguna que demostrara que, en efecto, el vehículo estaba reparado.

Por otro lado, es menester recordar que nuestra intervención es adecuada únicamente cuando el organismo recurrido haya actuado de una manera tan irrazonable que su actuación constituya un abuso de discreción. *Super Asphalt v. AFI y otro, supra.* Guiados por esta limitación y por la prueba ante nuestra consideración, determinamos que DACo no erró al erró al concluir que se configura la acción de saneamiento por vicios ocultos.

Como esbozamos anteriormente, el señor Santiago Sánchez experimentó desperfectos con el vehículo desde el día que lo adquirió. Avilés Auto, por su parte, asegura haber reparado el vehículo, mas no tiene documento alguno que evidencia el diagnóstico del vehículo ni las labores realizadas. Decididamente, DACo no incidió al responsabilizar a Avilés Auto para resarcir al recurrido. Al disponer de esta manera, antepuso los intereses del consumidor sobre los del vendedor. A base de los hechos probados, colegimos que la interpretación por parte de DACo, como agencia especializada, es razonable y, por ende, acreedora de nuestra deferencia judicial.

En cuanto a los honorarios por temeridad, acordamos no intervenir con la discreción de DACo.

**IV.**

Por los fundamentos expuestos, confirmamos la *Resolución* impugnada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones