Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| JOSÉ MANUEL SÁNCHEZ VILLAFAÑE<br><br>Recurrente<br><br>v.<br><br>BELLA INTERNATIONAL LLC<br><br>Recurrida | TA2025RA00382 | *Revisión Decisión Administrativa procedente del Departamento de Asuntos al Consumidor, Región de San Juan*<br><br>Caso núm.:<br>SAN-2023-0013816<br><br>Sobre:<br>Compra venta de vehículos de motor |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de abril de 2026.

El 8 de diciembre de 2025, el señor José Manuel Sánchez Villafañe (el señor Sánchez Villafañe o el recurrente) presentó ante nos un *Recurso de Revisión* en el que solicitó que revoquemos la *Resolución* recurrida emitida el 4 de noviembre de 2025, notificada el 6 de noviembre de 2025, por el Departamento de Asuntos del Consumidor (DACo).[1]

En el aludido dictamen, el DACo desestimó, con perjuicio, la *Querella* instada por el recurrente debido a que no cumplió con la carga probatoria requerida para que prosperara la reclamación que interpuso en contra de Bella International LLC (parte recurrida).

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

---

[1] *Recurso de Revisión*, Anejo 2.

**I.**

El caso de epígrafe tiene su origen el 3 de febrero de 2023, cuando el señor Sánchez Villafañe instó una *Querella* en la que alegó que, el 11 de diciembre de 2021, el recurrente compró una "pick-up", marca Honda modelo Ridgeline del año 2022 por la cuantía de $45,000.00.[2] El recurrente, indicó que, le informó a la parte recurrida que deseaba la instalación de unos sensores en la parte trasera del vehículo. Con ello, los mecánicos de la parte recurrida procedieron a realizar dicha labor.

Tras realizarse la instalación de los sensores, el señor Sánchez Villafañe adujo que, se percató que en el interior del vehículo había una humedad inusual. Ante ello, el recurrente arguyó que, acudió al Centro de Servicio de Honda en San Juan y, un empleado le informó que, estaba instalada de forma incorrecta la cablería del sensor de *back-up* y, ocasionó que entrara agua en el interior del vehículo. Señaló que, acudió al taller de mecánica de la parte recurrida, la cual arregló la cablería. No obstante, sostuvo que, como consecuencia de la humedad, el interior del vehículo se perjudicó. A raíz de ello, indicó que, un perito preparó un informe en el que encontró humedad y oxidación en el vehículo de motor. Consecuentemente, el recurrente alegó que, la situación fue ocasionada por las actuaciones y omisiones del personal de la parte recurrida y, por tanto, procedía que se le cambiara el vehículo de motor o se le devolviera la totalidad de la cuantía que pagó por dicho vehículo de motor.

El 9 de mayo de 2023, la parte recurrida radicó una *Contestación a la querella de Bella* en la que, negó en su mayoría las alegaciones contenidas en la *Querella*.[3] Arguyó que, el vehículo no adolecía de vicio o defecto de diseño. Alegó que, cumplió con sus

---

[2] *Íd.*, Anejo 1.
[3] *Íd.*, Anejo 3.

obligaciones y, los desperfectos se debieron a alteraciones no autorizadas por los operadores de la parte recurrida. En esa línea, adujo que, no ha actuado negligente ni de forma dolosa. Por otro lado, alegó que la causa de acción estaba prescrita y no incluyó partes indispensables en el pleito. Por ende, solicitó que, el DACo desestimara la causa de acción.

Así las cosas, el 17 de agosto de 2023, el DACo emitió una *Notificación de informe de inspección* en la que el organismo administrativo informó que inspeccionó el vehículo en cuestión.[4] Asimismo, le concedió a las partes un término para objetar el mismo.

Tras diversos incidentes procesales, el DACo celebró varias vistas administrativas.[5] Durante las vistas surgió que, el vehículo estaba en poder del recurrente cuando la agencia administrativa inspeccionó el vehículo.[6] El perito del DACo, testificó que, notó corrosión debajo de los asientos, rieles y soportes.[7] Planteó que, hubo presencia de agua clara por el color que tenía la alfombra del interior del vehículo, pero al momento de la inspección no contenía presencia de agua.[8] Indicó que, había una posibilidad de que el agua del interior del vehículo pertenecía a una ventana del cristal abierta o haya caído agua.[9] El perito, sostuvo que, era normal la corrosión en el área externa del vehículo.[10] Sin embargo, destacó que, la corrosión es un proceso normal en metales como lo es en los vehículos de motor.[11] Ratificó que, cuando levantó la alfombra notó que hubo en algún momento, presencia de agua.[12] El perito testificó que, llevó a cabo una prueba de carretera, dejó el vehículo bajo lluvia, luego levantó las alfombras y observó que no entró agua al

---

[4] *Íd.*, Anejo 4.
[5] *Íd.*, Anejo 2.
[6] Transcripción de la Prueba Oral (TPO) de la vista administrativa celebrada el 1 de agosto de 2025, pág. 10; líneas 25-27.
[7] TPO, pág. 11; líneas 2-5.
[8] *Íd.*, pág. 11; líneas 15-18.
[9] *Íd.*, pág. 15; líneas 20-26.
[10] *Íd.*, pág. 14; líneas 14-18.
[11] *Íd.*, pág. 34; líneas 29-37.
[12] *Íd.*, pág. 43; líneas 23-27.

vehículo en cuestión.[13] Sostuvo que, no había una conexión eléctrica afectada.[14] Indicó que, examinó los sensores del *back-up* y lo único que notó el *switch* no estaba acoplado correctamente.[15] No obstante, admitió que, los sensores estaban sellados y debidamente instalados.[16] Por otro lado, expresó que, hay diversos factores que influyen para que se oxide el aire acondicionado.[17] Además, alegó que, no salía ninguna partícula del aire acondicionado.[18]

Durante la vista, el señor Sánchez Villafañe sostuvo que, se percató que su vehículo tenía humedad y acudió a la Honda de la Kennedy dado que residía en San Juan.[19] El recurrente explicó que, en el concesionario le informaron que, entró agua por un tapón de la parte trasera que estaba fuera de lugar.[20] Ante ello, el concesionario le afirmó que, debía corregir dicha situación.[21] Asimismo, aseveró que, se encontró fuera de lugar los sensores en controversia y, por tanto, entró agua. Ante ello, explicó que, acudió a la oficina de la parte recurrida en aras de corregir el problema mecánico que confrontaba la unidad.[22] Aseveró que, el 14 de diciembre de 2022, la parte recurrida recibió una reclamación extrajudicial cursada por el recurrente.[23] El recurrente afirmó que, el 22 de enero de 2022, día en que le instalaron los sensores no confrontó problemas.[24] Luego el 11 de marzo de 2022, acudió a las facilidades de la parte recurrida, para un mantenimiento, y los sensores traseros estaban funcionando.[25] El señor Sánchez Villafañe afirmó que, el 14 de mayo de 2022 se personó al taller de mecánica de la parte recurrida por otros motivos, y admitió que el

---

[13] *Íd.*, pág. 44; líneas 28-30 y líneas 32-34; *Íd.*, pág. 45; líneas 1-15.
[14] *Íd.*, pág. 46; líneas 26-29.
[15] *Íd.*, pág. 48; líneas 38-41; *Íd.*, pág. 49; líneas 1-3; *Íd.*, pág. 53; líneas 42-47.
[16] *Íd.*, pág. 48; líneas 13-22.
[17] *Íd.*, pág. 36; líneas 1-8.
[18] *Íd.*, pág. 44; líneas 12-14.
[19] *Íd.*, pág. 79; líneas 44-46; *Íd.*, pág. 80; líneas 17-20.
[20] *Íd.*, pág. 81; líneas 5-11.
[21] *Íd.*, pág. 81; líneas 11-16.
[22] *Íd.*, pág. 91; líneas 32-34.
[23] *Íd.*, pág. 96; líneas 29-33; *Íd.*, pág. 97; líneas 43-46.
[24] *Íd.*, pág. 117; líneas 19-23.
[25] *Íd.*, pág. 117; líneas 30-42.

vehículo no confrontaba problemas con los sensores.[26] El recurrente reconoció que, el 5 de octubre de 2022, fue que se "quejó" de la humedad en su vehículo.[27] Ante ello, la parte recurrida le informó que un tapón que se encontraba en la parte trasera estaba fuera de lugar.[28] Agregó que, durante dicha visita, fue corregida la instalación de la goma por donde "pasan" los sensores.[29] Afirmó que, en posteriores visitas no observó humedad ni agua en su vehículo.[30] Ante varias preguntas, respondió que no le realizó un tratamiento a su vehículo para atender al oxidación a la cabina del vehículo.[31]

Tras diversos incidentes procesales, el 4 de noviembre de 2025, notificada el 6 de noviembre de 2025, el DACo emitió una *Resolución* en la que formuló las siguientes determinaciones de hechos:

1. El querellante, José Manuel Sánchez Villafañe, es mayor de edad, casado, médico y vecino de San Juan, Puerto Rico, con dirección en la Urbanización Parque Mediterráneo, Calle Capri 1-7, San Juan, Puerto Rico 00966.

2. El 11 de diciembre de 2021 el querellante adquirió un vehículo nuevo marca Honda, modelo Ridgeline 2022, número de serie 5FPYK3F14NB0O06642 (el "vehículo objeto"), en Honda de Cayey, concesionario de vehículos de motor operado por Bella International, LLC ("Bella"), financiando la misma con la entidad bancaria USAA Federal Savings Bank.

3. Bella International, LLC es una corporación doméstica con fines de lucro creada al amparo de las leyes de Puerto Rico que se dedica a la venta de vehículos de motor y sus accesorios, así como a la prestación de servicios relacionados.

4. Al momento de la compraventa el vehículo objeto de esta querella, no estaba equipado con "back-up sensors".

5. Como parte del proceso de compraventa, el querellante y el personal de Bella acordaron que el concesionario instalaría sensores de reversa ("back-up sensors") en el parachoques ("bumper") trasero del vehículo, para detectar la proximidad de objetos o personas al retroceder.

6. La instalación de los referidos sensores se realizó en o alrededor del 22 de enero de 2022 por el departamento de servicio del concesionario de Bella.

7. Aproximadamente ocho (8) meses después, en o alrededor del 5 de octubre de 2022, el querellante visitó el taller de servicio de Bella con quejas de humedad en el cristal delantera del vehículo, el cual contaba ya con 15,032 millas recorridas. El personal técnico de Bella encontró la cablería del sistema de sensores de reversa ("back-up sensors") fuera

---

[26] *Íd.*, pág. 118; líneas 14-25.
[27] *Íd.*, pág. 119; líneas 37-40; *Íd.*, pág. 120; líneas 20-24.
[28] *Íd.*, pág. 121; líneas 6-10.
[29] *Íd.*, pág. 122; líneas 26-30.
[30] *Íd.*, pág. 124; líneas 19-30.
[31] *Íd.*, pág. 129; líneas 32-40.

de su sitio, lo que había permitido la entrada de agua al interior de la cabina. El taller realizó la limpieza y reinstalación de la cablería del sistema libre de costo para el querellante.

8. Del récord y la prueba desfilada en la vista administrativa no surge que la garantía de fábrica del vehículo objeto haya sido anulada o denegada como consecuencia del incidente relacionado con los sensores de retroceso. Por el contrario, la evidencia documental y testifical demuestra que la garantía permaneció vigente y que Bella nunca rechazó reclamaciones bajo la misma mientras estuvo en vigor por tiempo y millaje.

9. El historial de servicio examinado en la vista revela que el vehículo no tuvo que regresar al taller de servicio por quejas adicionales de filtraciones de agua ni por funcionamiento defectuoso de los sensores de retroceso. En consecuencia, resulta forzoso concluir que el servicio brindado por el concesionario fue adecuado y efectivo para corregir la situación reportada.

10. Aunque la parte querellante alegó haber sufrido problemas respiratorios atribuidos a una supuesta contaminación del sistema de ventilación y aire acondicionado como consecuencia de una alegada entrada de agua, no surge del récord evidencia de que se hubiese quejado de problemas en el funcionamiento del aire acondicionado ni de contaminación del sistema. De hecho, consta que en o alrededor del 5 de febrero de 2024 Bella recomendó la sanitización del sistema de ventilación, el reemplazo del filtro de polen y la limpieza del "blower" del sistema de aire acondicionado, entre otros servicios, los cuales no fueron autorizados por el querellante, La parte querellante no desfiló prueba de daños convincente durante la vista administrativa.

11. Examinados los documentos correspondientes al historial de servicio del vehículo y el testimonio vertido durante la vista administrativa, no surge que el vehículo haya presentado condiciones que requirieran atención del taller que hubiese sido necesaria como consecuencia de la entrada de agua, más allá de la visita inicial el 5 de octubre de 2022 en la cual se corrigió la condición y se secó el área afectada. Tampoco se desprende del récord que el querellante haya visitado el taller de Bella en ningún momento con quejas de oxidación o corrosión en componente alguno del vehículo, ni que haya solicitado servicio alguno para corregir tal condición.

12. La evidencia desfilada, así como el propio testimonio del querellante, sí demuestran que éste cursó diversas comunicaciones electrónicas al personal de Bella solicitando el reemplazo de la unidad. Asimismo, el 13 de diciembre de 2022 el querellante presentó una reclamación extrajudicial notificando a Bella los hechos ocurridos y reiterando su solicitud de sustitución del vehículo. No obstante, de la prueba presentada y del propio reconocimiento del querellante, no surge que en ninguno de dichos acercamientos se hubiese solicitado atención o servicio alguno a ninguna condición en el vehículo, limitándose sus gestiones exclusivamente a requerir como remedio la resolución del contrato de compraventa o el reemplazo de la unidad.

13. El 27 de marzo de 2023 se notificó la querella presentada en contra de Bella, mediante la cual el querellante solicitó la resolución del contrato de compraventa, la devolución de las prestaciones y la imposición de daños y perjuicios. Posteriormente, el 8 de agosto de 2023, el querellante presentó una enmienda para incluir como parte querellada la institución financiera USAA Federal Savings Bank. No obstante, dicha entidad presentó una solicitud de

desestimación al entender que la querella carecía de alegaciones en su contra, la cual fue declarada con lugar en vista celebrada el 12 de marzo de 2024.

14. El 17 de julio de 2023 se llevó a cabo la inspección del vehículo objeto por parte del inspector técnico de esta agencia. Según el informe preparado, el vehículo se encontraba en poder del querellante con marbete vigente al momento de la inspección. La parte querellante objetó el informe notificado y solicitó la comparecencia del inspector del DACo, el Sr. José Torrón Martínez, a la vista administrativa.

15. Según el informe notificado y el testimonio del Sr. Torrón, éste observó durante la inspección señales que evidenciaban que en algún momento se había acumulado agua clara, según el característico color amarillento-ámbar del material cuando se humedece. No obstante, al momento de la evaluación no se observó presencia de agua ni humedad dentro de la cabina del vehículo, ni se percibió olor a humedad o señales de contaminación reciente. El inspector concluyó que la evidencia de humedad encontrada correspondía a un evento antiguo y que el área había secado de manera adecuada.

16. Durante la inspección el vehículo fue elevado en un pino hidráulico de taller, donde se observaron componentes con oxidación superficial considerada normal para piezas de aleación ferrosa sin protección anticorrosiva, conforme al diseño de fábrica.

17. Durante su testimonio, el perito del Departamento estableció que la condición de Oxidación presentada en la unidad es estética pero que debe ser atendida.

18. Durante la inspección, ocurrió una lluvia intensa que permitió realizar una prueba práctica de entrada de agua. El inspector, junto a los técnicos de las partes, permanecieron dentro de la cabina del vehículo durante la precipitación, sin observarse filtración alguna de agua ni derrames de fluidos hacia el interior.

19. El sello de goma por donde atraviesa la rabiza de cables y el cableado instalado de los sensores de retroceso en la parte trasera fue examinado y no mostró señales de filtración o paso de agua durante la lluvia. De hecho, a solicitud del técnico representante del querellante, se levantó nuevamente la alfombra delantera del lado del conductor, sin que se detectara presencia de humedad o filtración, a pesar de la fuerte lluvia que cayó durante la inspección. Por su parte, el sistema de sensores de reversa instalado fue evaluado y funciona correctamente durante la inspección técnica.

20. La parte querellante presentó como su perito de responsabilidad al Sr. Salvador López Cardec. Durante el voir dire sobre sus cualificaciones para testificar en el área de la oxidación, corrosión, sus causas y efectos, este Departamento tomó conocimiento de múltiples determinaciones emitidas por diversos foros judiciales y administrativos (incluyendo decisiones recientes) en las que se concluyó que el Sr.López Cardec no posee el conocimiento especializado ni la pericia técnica necesaria para declarar en esa materia.

21. Toda vez que este Departamento ya ha adjudicado anteriormente la falta de cualificación del Sr. López Cardec en el campo de la oxidación y corrosión, y considerando además que en el presente caso la parte querellante no presentó prueba alguna que acreditara nuevas cualificaciones o experiencia técnica que desvirtúe tales determinaciones previas, se concluye que el Sr. López Cardec no cuenta con el conocimiento especializado ni el peritaje requerido para testificar como experto en el área de la oxidación, corrosión, sus causas y efectos.

22. Luego de que este Departamento determinara lo anterior, la parte querellante optó por presentar el testimonio del Sr. López Cardec ni en las áreas en que quedó descualificado, ni en ninguna otra materia. En consecuencia, la parte querellante dejó el caso sometido a la consideración de este Departamento conforme a su solicitud y la evidencia previamente presentada.

El DACo determinó que, el problema de entrada de agua al vehículo fue debidamente atendida por la parte recurrida, libre de costo. Asimismo, razonó que, no hubo daños adicionales con respecto a la entrada de agua en el vehículo. Además, la oxidación que contenía el vehículo era normal y no se debió a la entrada de agua. En esa línea, concluyó que la garantía no cubría aspectos estéticos como lo era la oxidación. El organismo administrativo, resolvió que, el vehículo no tenía ningún vicio por lo que no procedía cambiar dicho vehículo.

Por otro lado, el señor Sánchez Villafañe no demostró que el aire acondicionado tenía un desperfecto y, tampoco visitó al taller de la parte recurrida para atender dicha situación. Con ello, surgió de la prueba desfilada que el recurrente rechazó un servicio de limpieza del aire acondicionado. El DACo resaltó que, descalificó al perito presentado por el recurrente tras no ostentar un grado de conocimiento especializado en la materia de corrosión y oxidación. Consecuentemente, el señor Sánchez Villafañe no demostró con suficiente prueba documental que la entrada de agua o la oxidación no fue atendida por la parte recurrida y, por tanto, carecía de tener una causa de acción. Por ende, desestimó, con perjuicio, la *Querella* instada por el recurrente.

Inconforme, el 8 de diciembre de 2025, el señor Ramos Villafañe instó un *Recurso de Revisión* en el que coligó los siguientes señalamientos:

Primer error: Erró el Honorable Departamento de Asuntos del Consumidor al emitir una determinación que no tomó en consideración la totalidad de la prueba presentada en la vista, incluyendo las fotografías que se presentaron en evidencia, y la garantía del vehículo, entre otras cosas.

Segundo error: Erró el Honorable Departamento de Asuntos del Consumidor al emitir una determinación que no se tomó en consideración la totalidad de la prueba presentada en la vista, incluyendo las fotografías que se presentaron en evidencia, y la garantía del vehículo, entre otras cosas.

En cumplimiento con nuestra *Resolución,* el 27 de marzo de 2026, la parte recurrida instó un *Alegato de Bella International, LLC en oposición a recurso de revisión administrativa* y luego se acreditó un alegato suplementario de la parte recurrente.

Con el beneficio de la comparecencia de las partes, así como la transcripción de la prueba oral, procederemos a resolver el recurso ante nos.

**II.**

**A.**

Los organismos administrativos merecen la mayor deferencia posible de los tribunales. *Otero* v. *Toyota,* 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. *Katiria's Café, v. Mun. de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473, 484 (2024); *Otero* v. *Toyota, supra,* pág. 728. Un principio establecido es que las determinaciones de las agencias administrativas tienen una presunción de legalidad y corrección en la que no deben intervenir los tribunales. *Rebollo* v. *Yiyi Motors,* 161 DPR 69, 78 (2004). Las determinaciones de hecho de las agencias tienen a su favor una "presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas." *Henríquez v. Consejo Educación Superior,* 120 DPR 194, 210 (1987); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018). Nuestro Tribunal Supremo ha expresado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están

sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero Mercado v. Toyota de P.R. Corp.,* 163 DPR 716, 727-728 (2005); *Domingo v. Caguas Expressway Motors,* 148 DPR 387, 397 (1999). Las determinaciones de hecho serán sostenidas por el tribunal, si se basan en evidencia sustancial que no obra en el expediente administrativo. *Vázquez et al. v. DACo,* 216 DPR ___ (2025), 2025 TSPR 56. Ejercitando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hecho realizadas por una agencia si están sostenidas por evidencia sustancial que surge del expediente. *Vázquez et al. v. DACo,* 2025 TSPR 56, 216 DPR ___ (2025); *Otero* v. *Toyota, supra,* pág. 728. Las determinaciones de hecho de las agencias tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Katiria's Café v. Mun. de San Juan, supra.*

El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra,* pág. 728. La

parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto de que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. *Metropolitan S.E. v. A.R.P.E.*, 138 DPR 200, 213 (1995) citando a *Hilton Hotels v. Junta de Salario Mínimo*, 74 DPR 670, 686 (1983).

El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra*, pág. 728.

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Las conclusiones de derecho serán revisables en todos sus aspectos por un tribunal. *Vázquez et al. v. DACo, supra.* La interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. *Vázquez v. Consejo de Titulares, supra.* Ello, como mecanismo interpretativo del poder

judicial. *Íd.* Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota, supra*, pág. 729. Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.* Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa". *Íd.*

No obstante, la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012). Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero* v. *Toyota,* 163 DPR 716, 730 (2005). Al ejercer la función revisora, el tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuvo ante sí. *Rebollo* v. *Yiyi Motors,* 161 DPR 69, 78 (2004). Por otro lado, las determinaciones de derecho, el tribunal tiene amplia

autonomía para revisarlas en todos sus aspectos. *Rebollo* v. *Yiyi Motors, supra*, pág. 77.

**B.**

El Art. 3 de la *Ley Orgánica del Departamento de Asuntos del Consumidor*, Ley Núm. 5 de abril de 1973, según enmendada, 3 LPRA sec. 341b, (Ley Núm. 5-1973), establece que, el DACo tendrá como propósito "vindicar e implementar los derechos del consumidor, frenar las tendencias inflacionarias; así como el establecimiento y fiscalización de un control de precios sobre los artículos y servicios de use y consumo." Al amparo del Art. 6 (c) de la Ley Núm. 5-1973, *supra* sec. 341e, dicho organismo administrativo ostenta el poder y facultad de:

> (c) Atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía. Cuando declare con lugar una querella, el Secretario ordenará al querellado perdidoso que haya procedido con temeridad que pague total o parcialmente los gastos incurridos por el Departamento en su tramitación. El Secretario dispondrá por reglamento los cargos por concepto de gastos que deberá pagar el querellado perdidoso.

Con ello, el DACo creó el *Reglamento de Garantías de Vehículos de motor*, Reglamento Núm. 7159 del 1 de junio de 2006 (Reglamento Núm. 7159), en aras de proteger a los consumidores que compren un vehículo de motor y que sirva para los propósitos para los cuales fue adquirido. Regla 2 del Reglamento Núm. 7159, *supra.* Así pues, la Regla 22 del Reglamento Núm. 7159, *supra,* dispone que,

> El Departamento podrá, a opción del comprador, decretar la resolución del contrato o reducir proporcionalmente el precio de venta de acuerdo con el Código Civil de Puerto Rico, en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica o fabricante, dentro de los términos de la garantía de fábrica, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos. Lo que constituye oportunidad razonable para reparar se determinará tomando en consideración las circunstancias particulares de cada caso.

En lo que respecta, una acción por vicios ocultos es cuando un producto tiene vicios o defectos ocultos y le corresponde al

vendedor responder. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 889 (2008). Si el bien obtenido tiene vicios, el comprador podrá desistir del contrato o solicitar una rebaja en el precio. *García Reyes v. Cruz Auto Corp, supra*, pág. 890. Para que prospere una acción de saneamiento por vicios ocultos deben concurrir los siguientes elementos: "(1) no deben ser conocidos por el adquirente; (2) el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella; (3) que sea preexistente a la venta, y (4) que se ejercite la acción en el plazo legal, que es el de seis meses contados desde la entrega de la cosa vendida". *García Reyes v. Cruz Auto Corp, supra*, págs. 890-891; *Polanco v. Cacique Motors*, 165 DPR 156, 166 (2005). En *Ford Motor Co. v. Benet*, 106 D.P.R. 232, 238 (1977), el Tribunal Supremo expresó que:

> Para llevar a cabo la acción redhibitoria por vicios ocultos en autos defectuosos, la jurisprudencia ha establecido que solamente compete al comprador probar que el automóvil que compró no funcionaba en forma normal y que el vendedor tuvo oportunidad de corregir los defectos y no pudo o no los corrigió.

El defecto debe ser oculto al momento de la compraventa. *Polanco v. Cacique Motors, supra*, pág. 168. En *Ferrer v. General Motors Corp.*, 100 D.P.R. 246 (1971), el máximo foro judicial interpretó que imponerle a un comprador lego que pruebe que piezas son defectuosas es una carga onerosa, No obstante, el comprado debe demostrar que "al momento de la compraventa el automóvil funcionaba normalmente, y que el vendedor no quiso o no pudo corregir el defecto a pesar de haber tenido la oportunidad de hacerlo". Véase, *Polanco v. Cacique Motors, supra*.

**III.**

En el caso de autos, el señor Sánchez Villafañe argumentó que, el DACo erró en no tomar en consideración la totalidad de la

prueba presentada en la vista, incluyendo unas fotografías y la garantía del vehículo. En adición, alegó que, el DACo erró al concluir que el recurrente no realizó diversos intentos para reparar el vehículo.

Por los señalamientos de error estar relacionados, procederemos a discutirlos en conjunto.

Harto es conocido que, debemos brindarle deferencia a las determinaciones de hechos que esbozan las agencias administrativas. En reiteradas ocasiones, este Tribunal ha resuelto que no intervendremos en las determinaciones de hechos de una agencia, salvo que la determinación administrativa no esté basada en evidencia sustancial; el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional. De lo contrario, debemos abstenernos en modificar las determinaciones de hechos que formule la agencia toda vez que, el foro administrativo evaluó la prueba desfilada ante su consideración.

Como corolario de lo anterior, la ley orgánica del DACo le confirió la facultad de promulgar reglamentos para atender los reclamos de las personas que entablan una querella ante dicha agencia. Con ello, el DACo promulgó el Reglamento Núm. 7159, *supra*, en aras de poder atender los reclamos de las personas que compran un vehículo de motor y este adolezca de vicios ocultos. Asimismo, el DACo tiene el deber de proteger las inversiones de los clientes cuando compran un vehículo de motor. Cónsono con lo anterior, la Regla 22 del Reglamento Núm. 7169, *supra*, dispone que, si un vehículo tiene vicios, el DACo puede decretar la resolución del contrato o reducir el precio de venta en caso de que el vendedor optó por no atender o reparar los defectos del vehículo.

Luego de un análisis detallado del expediente, denotamos que, no debemos alterar la *Resolución* recurrida. De entrada, al examinar el testimonio del perito contratado por el recurrente atisbamos que, no tenía el peritaje y el conocimiento experto para ilustrar al foro administrativo en cuanto a si verdaderamente el agua que entró en la parte interior del vehículo ocasionó la humedad que tuvo esa área.

Ahora bien, se desprende que, el 22 de enero de 2022, el señor Sánchez Villafañe acudió a las facilidades de la parte recurrida para que le instaran unos sensores en la parte trasera.[32] Del testimonio vertido en las vistas administrativas, el propio señor Sánchez Villafañe admitió que, luego de instalar las luces traseras, acudió a visitar el taller de mecánica de la parte recurrida con tal de obtener servicios de mantenimiento. Ante ello, durante ese periodo, no confrontó problema alguno con los sensores instalados por la parte recurrida en la parte trasera del vehículo. No obstante, tras diversas visitas para que su vehículo recibiera mantenimiento, no fue hasta el **5 de octubre de 2022**, que se quejó de la humedad en el vehículo.[33] Ese mismo día, la parte recurrida le informó que, la goma que esta por el área de las luces traseras estaba suelta, empero, fue reparada en igual fecha dicha goma, la cual producía la entrada de agua.[34] Pese a lo anterior, el recurrente cursó una carta extrajudicial a la parte recurrida reclamándole que entró agua a su vehículo y que deseaba un vehículo nuevo o le devolvieran la totalidad de la cuantía que pagó por este.[35]

Una vez iniciado el procedimiento administrativo por el recurrente, un perito del DACo inspeccionó el vehículo[36] y denotó que, la humedad contenida en el interior del vehículo se debió a un evento lejano. También, dicho perito razonó que, la entrada de agua

---

[32] *Íd.*, pág. 117; líneas 19-23.
[33] *Íd.*, pág. 119; líneas 37-40; *Íd.*, pág. 120; líneas 20-24.
[34] *Íd.*, pág. 121; líneas 6-10; *Íd.*, pág. 122; líneas 26-30.
[35] *Íd.*, pág. 96; líneas 29-33; *Íd.*, pág. 97; líneas 43-46.
[36] *Íd.*, pág. 11; líneas 15-18.

fue corregida por la parte recurrida. Asimismo, cuando el perito examinó el vehículo, este no contenía humedad ni presencia de agua. Igualmente, el DACo determinó que, la oxidación que tenía la parte metálica del interior del vehículo fue por procesos naturales[37] y, por tanto, eran aspectos estéticos que no los cubría la garantía del vehículo.[38] A su vez, el recurrente no volvió a confrontar problemas con entrada de agua, una vez fue arreglado el sello de goma en cuestión.[39] A esos fines, el perito del DACo inspeccionó el vehículo luego de una lluvia intensa, sin estar bajo techo, y denotó ausencia de entrada de agua en el interior del vehículo de motor.[40] Al respecto, la humedad que tuvo el vehículo, a consecuencia de la entrada de agua, no produjo daños al interior del vehículo.

Ciertamente, esta Curia determina que, las determinaciones de hechos formuladas por el DACo fueron fundamentadas con la evidencia que tuvo ante su consideración. Ello, pues la parte recurrida fue diligente en atender y corregir la entrada de agua en el vehículo. Además, en esta ocasión y ante la particularidad de los hechos, debemos brindarle la deferencia que amerita dado que el DACo fue el que tuvo la prueba ante sí. Así, el DACo es quien ostenta el conocimiento experto para determinar si la entrada de agua en el vehículo ocasionó que no procediera la *Querella* entablada por el recurrente. Reiteramos que, tras examinar el contenido de las vistas y el expediente administrativo, las determinaciones de hechos fueron en ausencia de pasión, prejuicio o parcialidad. Resaltamos que, el remedio solicitado por el recurrente era improcedente en virtud de que la entrada de agua fue resuelta y el vehículo aún era útil. Es decir, la entrada de agua en el vehículo no produjo los daños meritorios para conceder el remedio solicitado por el recurrente.

---

[37] *Íd.*, pág. 34; líneas 29-37.
[38] *Véase* Determinaciones de hechos de la *Resolución* recurrida, Anejo 2.
[39] *Íd.*, pág. 48; líneas 13-22.
[40] *Íd.*, pág. 44; líneas 28-30 y líneas 32-34; *Íd.*, pág. 45; líneas 1-15.

Concurrimos con la determinación del organismo administrativo, dado que el recurrente no demostró con suficiente evidencia que la entrada de agua perjudicó el interior del vehículo a tal magnitud que debía cambiarse el vehículo u ordenar la devolución de la cuantía pagada por este. Consecuentemente, la parte recurrida fue diligente en reparar la entrada de agua y, por tanto, no procede el remedio solicitado por el recurrente al palio de la Regla 22 del Reglamento Núm. 7159, *supra.*

A la luz de los fundamentos esbozados, confirmamos la *Resolución* recurrida al amparo de que el DACo coligó las determinaciones de hechos con la prueba que tuvo ante sí. De igual forma, no procede el remedio que solicitó el recurrente en la *Querella* debido a que la entrada de agua en el vehículo fue corregida y no produjo daños que requirieran un resarcimiento.

**IV.**

Por los fundamentos que anteceden, confirmamos la *Resolución* recurrida.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones